# CENTRAL TRUST COMPANY OF ILLINOIS, TRUSTEE OF FRANK E. SCOTT TRANSFER COMPANY, BANKRUPT, *v.* CHICAGO AUDITORIUM ASSOCIATION.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
SEVENTH CIRCUIT.

# CHICAGO AUDITORIUM ASSOCIATION *v.* CENTRAL TRUST COMPANY, TRUSTEE, &c.

APPEAL FROM AND CERTIORARI TO THE CIRCUIT COURT OF
APPEALS FOR THE SEVENTH CIRCUIT.

Nos. 162, 174. Argued January 12, 1916.—Decided April 3, 1916.

Appeals from decisions of the Circuit Court of Appeals, allowing or rejecting a claim in bankruptcy, are, in the absence of the certificate prescribed by § 25b–2, limited under § 25b–1 to cases involving Federal questions of the kind described in § 237, Jud. Code.

. Whether damages for anticipatory breach of an executory contract which one of the parties can cancel on notice after a stated period can be recovered for the life of the contract or only up to the end of such period after the breach involves no Federal question.

Where the question on which a cross appeal is based is of general importance in relation to questions involved on the direct appeal, the court may, and in this case does, allow a certiorari in lieu of the cross appeal which must be dismissed.

The general rule, the exceptions to which are not material in this case, is that where a party, bound by an executory contract, repudiates his obligations or disables himself from performance, the promisee has the option to treat the contract as ended and. may maintain an action at once for damages occasioned by the anticipatory breach.

The intervention of bankruptcy, *held*, under the circumstances of this case, to constitute such a breach, notwithstanding the petition was involuntary; and also *held* that the claim of the promisee is one founded upon a contract expressed or implied and provable under .§ 63a–4, and that the damages may be liquidated under § 63b.

In this case, *held* that the claim may be proved for damages occasioned by the breach covering the entire life of the contract, notwithstanding the party proving the claim had the right to cancel on a stated notice, that provision not being reciprocal.

216 Fed. Rep. 308, affirmed as to allowance of claim; cross appeal therefrom dismissed; certiorari allowed and reversed as to amount of claim allowed.

THE facts, which involve the effect of bankruptcy of one party to an executory contract and the right of the other party to regard the same as an anticipatory breach of the contract and to prove its claim against the bankrupt's estate, are stated in the opinion.

*Mr. Edwin C. Brandenburg*, with whom *Mr. Frederick D. Silber* and *Mr. Clarence J. Silber* were on the brief, for Central Trust Company, Trustee:

Subdivisions 1 and 4 of § 63a, of the Bankruptcy Act, must be construed together, and the words, "absolutely owing at the time of the filing of the· petition, etc.," appearing in subd. 1, are to be read into and construed as a part of subd. 4. *Zavelo* v. *Reeves*, 227 U. S. 625; *Re*

*Roth,* 181 Fed. Rep. 667; *Colman Co.* v. *Withoft,* 195 Fed. Rep. 250.

Anticipatory breach of an executory contract, results from a positive, unconditional and unequivocal declaration by a party thereto, or fixed purpose not to perform the contract, in any event or at any time. *Dingley* v. *Oler,* 117 U. S. 490; *Roehm* v. *Horst,* 178 U. S. 1; *Lake Shore &c. Ry.* v. *Richards,* 152 Illinois, 59; *Zuck* v. *McClure,* 98 Pa. St. 541; *Johnstone* v. *Milling,* L. R. 16 Q. B. Div. 460; *Dalrymple* v. *Scott,* 19 Ont. App. Rep. 477; *People* v. *Globe Ins. Co.,* 91 N. Y. 174; distinguishing: *Lovell* v. *St. Louis Ins. Co.,* 111 U. S. 264; *Carr* v. *Hamilton,* 129 U. S. 252; *Penna. Steel Co.* v. *N. Y. City Ry.,* 198 Fed. Rep. 721, 735.

Neither insolvency nor the filing of an involuntary petition in bankruptcy, followed by adjudication, constitutes a breach of an executory contract, to which the insolvent or bankrupt is a party, and from which a provable debt accrues. *Phenix Bank* v. *Waterbury,* 197 N. Y. 161; *Re Agra Bank,* L. R. 5 Eq. Cas. 160; *Malcomson* v. *Wappoo Mills,* 88 Fed. Rep. 680; *Re Inman & Co.,* 171 Fed. Rep. 185; *S. C.,* 175 Fed. Rep. 312; *Lesser* v. *Gray,* 8 Ga. App. 605; aff'd in 236 U. S. 70; *Re Imperial Brewing Co.,* 143 Fed. Rep. 579; *Matter of Montague,* 32 Am. B. R. 106; distinguishing *Re Swift,* 112 Fed. Rep. 315; *Re Pettingill,* 137 Fed. Rep. 143; *Re Neff,* 157 Fed. Rep. 57.

Resulting claim for damages, if bankruptcy is in fact a breach, constitutes nothing more than a contingent claim, which is non-provable under the present Bankruptcy Act, § 63a. 1 Remington on Bank. (2d ed., § 641); *Dunbar* v. *Dunbar,* U. S. 340; *Cotting* v. *Hooper,* 34 Am. B. R. 23; *Re Levy,* 208 Fed. Rep. 479; *Re American Vacuum Cleaner Co.,* 192 Fed. Rep. 939; *Williams* v. *U. S. Fidelity Co.,* 236 U. S. 549.

For the same reason, as applied to leasehold contracts,

subsequent installments of rent or damages for alleged breach through bankruptcy, of one of the parties, are not provable in bankruptcy. *Watson* v. *Merrill*, 136 Fed. Rep. 359; *Colman* v. *Withoft*, 195 Fed. Rep. 250; *Re Roth*, 181 Fed. Rep. 667; *Slocum* v. *Soliday*, 183 Fed. Rep. 410.

The contract involved passed, by operation of law, and as part of the bankrupt's estate, to the appellant as its trustee. *Gazlay* v. *Williams*, 210 U. S. 41.

As such, the appellant had a reasonable length of time after its election and qualification as trustee, to either assume or renounce performance of the contract. *Sparhawk* v. *Yerkes*, 142 U. S. 1, 13; *Sessions* v. *Romadka*, 145 U. S. 29; *Atch., Top. &c. Ry.* v. *Hurley*, 153 Fed. Rep. 503.

*Mr. William D. Bangs*, with whom *Mr. Rudolph Matz* and *Mr. John C. Mechem* were on the brief, for Chicago Auditorium Association:

Bankruptcy constitutes a material breach of executory contracts. Disablement from performance is a breach of contract. *Roehm* v. *Horst*, 178 U. S. 1.

Insolvency is often a disablement. *Chemical Bank* v. *World's Columbian Exp.*, 170 Illinois, 82; *Bank of Commissioners* v. *New Hampshire Trust Co.*, 69 N. H. 621.

Similarly, so is the appointment of a receiver. *Pennsylvania Steel Co.* v. *New York City Ry.*, 198 Fed. Rep. 721.

Or proceedings for liquidation under special statutes. *Lovell* v. *St. Louis Life Ins. Co.*, 111 U. S. 264; *Carr* v. *Hamilton*, 129 U. S. 252.

Bankruptcy is a complete disablement. *Re Swift*, 112 Fed. Rep. 315; *Re Pettingill*, 137 Fed. Rep. 143; *Re Neff*, 157 Fed. Rep. 57; *Re Duquesne Light Co.*, 176 Fed. Rep. 785; *Re Dr. Vorhees Co.*, 187 Fed. Rep. 611.

A claim for damages for a material breach of an executory contract caused by bankruptcy constitutes a provable debt. Cases *supra*, and see also *Zavelo* v. *Reeves*, 227 U. S. 625; *Ex parte Pollard*, 2 Lowell, 411; *Lesser* v.

*Gray,* 236 U. S. 70; *Grant Shoe Co.* v. *Laird,* 212 U. S. 445.

The present case does not involve an anticipatory breach of contract. Williston, Wald's Pollock on Contracts, pp. 362, 363; *Lowe* v. *Harwood,* 139 Massachusetts, 135.

The claim is provable, although the damages are unliquidated and the trustee has an option to continue the performance of executory contracts. *Grant Shoe Co.* v. *Laird,* 212 U. S. 445; *Re Swift et al.,* 112 Fed. Rep. 315; *Dunbar* v. *Dunbar,* 190 U. S. 340; *Cobb* v. *Overman,* 109 Fed. Rep. 65.

The rule as to the material breach of a covenant to pay rent does not apply to the material breach of executory contracts. Co. Litt. 292b, §§ 512–513; *Re Roth and Appel,* 181 Fed. Rep. 667; *Watson* v. *Merrill,* 136 Fed. Rep. 359; *Slocum* v. *Soliday,* 183 Fed. Rep. 410.

An option in one party of cancellation upon stipulated contingencies does not, after material breach by the other party, affect the recovery of damages for breach of contract by that party for whose benefit the option was inserted. *Dunbar* v. *Dunbar,* 190 U. S. 340.

The general policy of the Bankruptcy Act favors the provability of claims for damages upon executory contracts matured by bankruptcy. *Williams* v. *U. S. Fidelity Co.,* 236 U. S. 549.

MR. JUSTICE PITNEY delivered the opinion of the court.

On July 22, 1911, a creditors' petition in bankruptcy was filed against the Frank E. Scott Transfer Company, an Illinois corporation, and it was adjudged a bankrupt on August 7. The act of bankruptcy charged and adjudicated does not appear. When the proceedings were commenced, the bankrupt held contract relations with the Chicago Auditorium Association under a written agreement made between them February 1, 1911, which had been partially

performed. By its terms the Association granted to the Transfer Company, for a term of five years from the date of the contract, the baggage and livery privilege of the Auditorium Hotel, in the City of Chicago, that is to say, the sole and exclusive right, so far as it was within the legal capacity of the Association to grant the same, to transfer baggage and carry passengers to and from the hotel and to furnish livery to its guests and patrons. For the baggage privilege the Transfer Company agreed to pay to the Association the sum of $6,000, in monthly instalments of $100 each, and for the livery privilege the sum of $15,000 in monthly instalments of $250 each, and also agreed to furnish to the hotel and its guests and patrons prompt and efficient baggage and livery service at reasonable rates at all times during the continuance of the privileges. It was further agreed as follows:

"The party of the first part [Chicago Auditorium Association], however, reserves the right, which is an express condition of the foregoing grants, to cancel and revoke either or both of said privileges, by giving six months' notice in writing of its election so to do, whenever the service is not, in the opinion of the party of the first part, satisfactory, or in the event of any change in management of said hotel; and in case of the termination of either or both of said privileges by exercise of the right and option reserved by this paragraph, such privilege or privileges shall cease and determine at the expiration of the six months' notice aforesaid, and both parties hereto shall in that case be released from further liability respecting the concession so cancelled and revoked.

"Said rights and concessions shall not be assignable without the express written consent of the party of the first part, nor shall the assignment of the same, with such written consent, relieve the party of the second part [Scott Transfer Company] from liability on the covenants and agreements of this instrument."

The contract authorized the Association, in the event of default by the Transfer Company in the payment of any instalment of money due, or in the performance of any other covenant, if continued for thirty days, to terminate the privileges at its option, without releasing the Transfer Company from liability upon its covenants. Should either or both of the privileges be thus terminated before January 31, 1916, the Association was to be at liberty to sell the privileges, or make a new or different contract for the remainder of the term, but was not to be obliged to do this, and the Transfer Company, unless released in writing, was to remain liable for the entire amount agreed to be paid by it.

Up to the time of the bankruptcy this contract remained in force, and neither party had violated any of its covenants. The trustee in bankruptcy did not elect to assume its performance, and the Association entered into a contract with other parties for the performance of the baggage and livery service, and obtained therefrom the sum of $234.69 monthly as compensation for those privileges. On February 28, 1912, it exhibited its proof against the bankrupt estate, claiming an indebtedness of $6,537.94, of which $311.20 had accrued prior to the bankruptcy proceedings, and the remainder was claimed as unliquidated damages arising under the contract for alleged breach thereof on the part of the bankrupt through the bankruptcy proceedings. Of this amount $691.86 represented the loss incurred during the first six months of bankruptcy. Objections filed by the trustee were sustained by the referee, except as to that portion of the claim which had accrued prior to the bankruptcy proceedings. On review, the District Court sustained this decision. On appeal to the Circuit Court of Appeals, the order of the District Court was reversed, and the cause remanded with direction to allow $691.86 upon the claim, and to disallow the remaining portion. 216 Fed. Rep. 308.

An appeal to this court by the trustee in bankruptcy was allowed, under § 25b-2 of the Bankruptcy Act (of July 1, 1898, c. 541; 30 Stat. 544, 553), upon a certificate by a Justice of this court that the determination of the questions involved was essential to a uniform construction of the Act throughout the United States. This is No. 162. Thereafter a cross-appeal by the Auditorium Association was allowed by one of the judges of the Circuit Court of Appeals. This is No. 174.

A motion is made to dismiss the cross-appeal, and this must be granted. In the absence of the certificate prescribed by § 25b-2, the sole authority for an appeal from a decision of the Circuit Court of Appeals allowing or rejecting a claim is found in § 25b-1: "Where the amount in controversy exceeds the sum of two thousand dollars, and the question involved is one which might have been taken on appeal or writ of error from the highest court of a State to the Supreme Court of the United States." This limits such appeals to cases where Federal questions are involved, of the kind described in § 237, Jud. Code. The motion to dismiss is resisted upon the ground that the claim of the Association to damages beyond a period of six months was denied by the Court of Appeals as not constituting a provable debt in bankruptcy, and that a Federal question is thus necessarily presented, provability depending upon a construction of the Bankruptcy Act. An examination of the opinion of that court, however, shows that while it held that damages for anticipatory breach of the contract were provable, it held that the contract itself, because of the option reserved to the Auditorium Association to cancel it on six months' notice, was mutually obligatory for that term only, and hence no damages beyond that period were allowable. This involved no Federal question. *Chapman* v. *Bowen*, 207 U. S. 89, 92.

But, in view of the general importance of the question of the amount allowable in its relation to the questions

involved in the trustee's appeal, we have concluded that a certiorari should be allowed in lieu of the cross-appeal.

Coming to the merits: It is no longer open to question in this court that, as a rule, where a party bound by an executory contract repudiates his obligations or disables himself from performing them before the time for performance, the promisee has the option to treat the contract as ended, so far as further performance is concerned, and maintain an action at once for the damages occasioned by such anticipatory breach. The rule has its exceptions, but none that now concerns us. *Roehm* v. *Horst*, 178 U. S. 1, 18, 19. And see *O'Neill* v. *Supreme Council*, 70 N. J. L. 410, 412. There is no doubt that the same rule must be applied where a similar repudiation or disablement occurs during performance. Whether the intervention of bankruptcy constitutes such a breach and gives rise to a claim provable in the bankruptcy proceedings is a question not covered by any previous decision of this court, and upon which the other Federal courts are in conflict. It was, however, held in *Lovell* v. *St. Louis Life Ins. Co.*, 111 U. S. 264, 274, where a life insurance company became insolvent and transferred its assets to another company, that a policy-holder was entitled to regard his contract as terminated and demand whatever damages he had sustained thereby. And see *Carr* v. *Hamilton*, 129 U. S. 252, 256. In support of the provability of the claim in controversy, *Ex parte Pollard*, 2 Low. 411; Fed. Cas. No. 11,252; *In re Swift* (C. C. A. 1st), 112 Fed. Rep. 315, 319, 321; *In re Stern* (C. C. A. 2d), 116 Fed. Rep. 604; *In re Pettingill & Co.* (D. C., Mass.), 137 Fed. Rep. 143, 146, 147; *In re Neff* (C. C. A. 6th), 157 Fed. Rep. 57, 61, are referred to; and see *Pennsylvania Steel Co.* v. *New York City Ry. Co.* (C. C. A. 2d), 198 Fed. Rep. 721, 736, 744. To the contrary, *In re Imperial Brewing Co.* (D. C., Mo.), 143 Fed. Rep. 579; *In re Inman & Co.* (D. C., Ga.), 171 Fed. Rep. 185;

*S. C.*, 175 Fed. Rep. 312; besides which a number of cases arising out of the relation of landlord and tenant are cited: *In re Ells*, 98 Fed. Rep. 967; *In re Pennewell*, 119 Fed. Rep. 139; *Watson* v. *Merrill*, 136 Fed. Rep. 359; *In re Roth & Appel*, 181 Fed. Rep. 667; *Colman Co.* v. *Withoft*, 195 Fed. Rep. 250. Cases of the latter class are distinguishable, because of the "diversity betweene duties which touch the realty, and the meere personalty." Co. Litt., 292, b, § 513.

The contract with which we have to deal was not a contract of personal service simply, but was of such a nature as evidently to require a considerable amount of capital, in the shape of equipment, etc., for its proper performance by the Transfer Company. The immediate effect of bankruptcy was to strip the company of its assets, and thus disable it from performing. It may be conceded that the contract was assignable, and passed to the trustee under § 70a (30 Stat. 565), to the extent that it had an option to perform it in the place of the bankrupt (see *Sparhawk* v. *Yerkes*, 142 U. S. 1, 13; *Sunflower Oil Company* v. *Wilson*, 142 U. S. 313, 322); for although there was a stipulation against assignment without consent of the Auditorium Association, it may be assumed that this did not prevent an assignment by operation of law. Still, the trustee in bankruptcy did not elect to assume performance, and so the matter is left as if the law had conferred no such election.

It is argued that there can be no anticipatory breach of a contract except it result from the voluntary act of one of the parties, and that the filing of an involuntary petition in bankruptcy, with adjudication thereon, is but the act of the law resulting from an adverse proceeding instituted by creditors. This view was taken, with respect to the effect of a state proceeding restraining a corporation from the further prosecution of its business or the exercise of its corporate franchises, appointing a receiver, and

dissolving the corporation, in *People* v. *Globe Ins. Co.*, 91 N. Y. 174, cited with approval in some of the Federal court decisions above referred to.   In that case, it did not appear that the company was the responsible cause of the action of the State, so as to make the dissolution its own act; but, irrespective of this, we cannot accept the reasoning.   As was said in *Roehm* v. *Horst*, 178 U. S. 1, 19: "The parties to a contract which is wholly executory have a right to the maintenance of the contractual relations up to the time for performance, as well as to a performance of the contract when due."   Commercial credits are, to a large extent, based upon the reasonable expectation that pending contracts of acknowledged validity will be performed in due course; and the same principle that entitles the promisee to continued willingness entitles him to continued ability on the part of the promisor.   In short, it must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performance; and, in this view, bankruptcy proceedings are but the natural and legal consequence of something done or omitted to be done by the bankrupt, in violation of his engagement.   It is the purpose of the Bankruptcy Act, generally speaking, to permit all creditors to share in the distribution of the assets of the bankrupt, and to leave the honest debtor thereafter free from liability upon previous obligations.   *Williams* v. *U. S. Fidelity Co.*, 236 U. S. 549, 554.   Executory agreements play so important a part in the commercial world that it would lead to most unfortunate results if, by interpreting the Act in a narrow sense, persons entitled to performance of such agreements on the part of bankrupts were excluded from participation in bankrupt estates, while the bankrupts themselves, as a necessary corollary, were left still subject to action for non-performance in the future, although without the property or credit often necessary to enable them to per-

form.   We conclude that proceedings, whether voluntary
or involuntary, resulting in an adjudication of bankruptcy,
are the equivalent of an anticipatory breach of an execu-
tory agreement, within the doctrine of *Roehm* v. *Horst*,
*supra*.

The claim for damages by reason of such a breach is
"founded upon a contract, express or implied," within
the meaning of § 63a-4, and the damages may be liquidated
under § 63b.  *Grant Shoe Co.* v. *Laird*, 212 U. S. 445, 448.
It is true that in *Zavelo* v. *Reeves*, 227 U. S. 625, 631, we
held that the debts provable under § 63a-4 include only
such as existed at the time of the filing of the petition.
But we agree with what was said in *Ex parte Pollard*,
2 Low. 411, Fed. Cas. No. 11,252, that it would be "an
unnecessary and false nicety" to hold that because it was
the act of filing the petition that wrought the breach,
therefore there was no breach at the time of the petition.
And as was also declared in *In re Pettingill*, 137 Fed.
Rep. 143, 147: "The test of provability under the Act
of 1898 may be stated thus: If the bankrupt, at the time
of bankruptcy, by disenabling himself from perform-
ing the contract in question, and by repudiating its obli-
gation, could give the proving creditor the right to main-
tain at once a suit in which damages could be assessed
at law or in equity, then the creditor can prove in bank-
ruptcy on the ground that bankruptcy is the equivalent
of disenablement and repudiation.  For the assessment of
damages proceedings may be directed by the court under
§ 63b (30 Stat. 562)."  It was in effect so ruled by this
court in *Lesser* v. *Gray*, 236 U. S. 70, 75, where it was said:
"If, as both the bankruptcy and state courts concluded,
the contract was terminated by the involuntary bank-
ruptcy proceeding, no legal injury resulted.  If, on the
other hand, that view of the law was erroneous, then there
was a breach and defendant Gray became liable for any
resulting damage; but he was released therefrom by his

discharge." Of course, he could not be released unless the debt was provable.

We therefore conclude that the Circuit Court of Appeals was correct in holding that the intervention of bankruptcy constituted such a breach of the contract in question as entitled the Auditorium Association to prove its claim.

The denial of all damages except such as accrued within six months after the filing of the petition was based upon the ground that the contract reserved to the Association an option to revoke the privileges by giving six months' notice in writing of its election so to do, in which case both parties were to be released from further liability at the expiration of the six months. It was held that because of this the contract was mutually obligatory for that term only, and uncertain and without force for any longer term of service *in futuro*, within the ruling of this court in *Dunbar* v. *Dunbar*, 190 U. S. 340. In that case the contract was to pay to a divorced wife "during her life, or until she marries, for her maintenance and support, yearly, the sum of five hundred dollars"; and it was held that for instalments falling due after bankruptcy the husband remained liable, notwithstanding his discharge, on the ground that the wife's claim for such payments was not provable because of the impossibility of calculating the continuance of widowhood so as to base a valuation upon it. The court referred to the 1903 amendment of § 17 of the Bankruptcy Act (32 Stat. 797) relating to debts not affected by a discharge, and including among these a liability for alimony due or to become due for maintenance or support of wife or child. This, while enacted after the Dunbar suit was begun, and not applicable to it, was cited as showing the legislative trend in the direction of not discharging an obligation of the bankrupt for the support of his wife or children. The authority of that decision cannot be extended to cover

such a case as the present. Here the obligation of the
bankrupt was clear and unconditional. The right reserved
to the Auditorium Association to cancel and revoke the
privileges was reserved for its benefit, not that of the
grantee of those privileges. It does not lie in the mouth
of the latter, or of its trustee, to say that its service would
not be satisfactory, and there is no presumption that
otherwise it would have been advantageous to the Asso-
ciation to exercise the option. It results that the decree,
in so far as it limits the provable claim to a period of six
months after the bankruptcy, must be reversed, and the
cause remanded for further proceedings in conformity
with this opinion.

*No. 162. Decree affirmed. No. 174. Appeal dismissed,
certiorari allowed, and decree reversed.*