## TECUMSEH OIL & COTTON CO. v. GRESHAM. (No. 1811.)

(Court of Civil Appeals of Texas. Amarillo. May 4, 1921. Rehearing Denied June 1, 1921.)

**1. Novation ⬳7—Seller could not substitute other party in its place.**

A company which contracted to deliver cottonseed oil could not substitute some other party in its place and require the buyer to deal direct with such party in receipt of instructions for the delivery of the oil or settlement therefor.

**2. Customs and usages ⬳19(3)—Evidence insufficient to show custom that seller might require buyer to deal with other party direct.**

Evidence held insufficient to show that under the usages and customs of the trade defendant seller of oil had the right to satisfy its contract by requiring the buyer to deal direct with another party for the oil.

**3. Sales ⬳173 — Receiver of buyer company held to have furnished cars for shipment, though cars belonged to other.**

Receiver of a company, the buyer of cottonseed oil, had authority to use for the acceptance of the oil from the seller company certain cars belonging to another company, so, though he offered no other cars, he did not fail to furnish cars for the shipment.

**4. Receivers ⬳90—Need not carry out executory contract, but estate is liable for breach.**

Though a receiver may not be forced to carry out executory contract, the estate is not, by his rejection of the contract, released from liability for its breach.

**5. Sales ⬳418(12)—Buyer which resold entitled to recover for seller's failure to deliver.**

Where the buyer of oil, if deliveries had been made as contracted, could, through its receiver, have performed its resale contract, the original seller of the oil, not having delivered, could not successfully claim that the original buyer was not damaged by the failure to deliver, on the ground that, as the resale price was less than the purchase price, no profit would have been realized from the resale, since the original buyer's damages for failure to make deliveries included not merely loss of profits from the resale, but also liability incurred for breach of the resale contract.

**6. Sales ⬳181(11) — Evidence insufficient to show buyer refused to pay for car of oil on demand.**

In suit by the trustee of a company which purchased cottonseed oil against the seller for failure to deliver, evidence held insufficient to support defendant seller's claim that the buyer company, prior to its bankruptcy, failed and refused to pay for a tank car of oil on demand, which operated as a repudiation of the contract.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Suit by O. S. Gresham, trustee, against the Tecumseh Oil & Cotton Company. From judgment for plaintiff, defendant appeals. Affirmed.

See, also, 211 S. W. 458.

J. F. Holt and Wolfe & Freeman, all of Sherman, for appellant.

Wood, Jones & Hassell, of Sherman, for appellee.

BOYCE, J. In August, 1915, the Tecumseh Cotton Oil Company, hereinafter referred to as the Tecumseh Company, agreed to sell to the Sherman Cotton Oil & Provision Company, hereinafter referred to as the Sherman Company, three tank cars of cottonseed oil, to be delivered in November, 1915, at "35 cents per gallon, loose, f. o. b. Oklahoma common points, in tank cars of 160 barrels capacity each, to be furnished by buyers," cars to be shipped and routed at "buyer's option" and paid for on "sight draft against bill of lading for invoice amount." The contract was made subject to the rules of the Interstate Cotton Seed Crushers' Association. Two of these rules involved in the discussion of the controversy between the said parties are as follows:

"Section 3. Rule 28. In case of contracts for oil for specified shipments it shall be the duty of the seller to notify buyer at least ten days previous to the expiration of the period in which the tank cars might be forwarded, in time to reach seller, in time to admit of shipment of the oil within the contract period. In case·seller does not give such instructions within the period specified, it shall be the duty of the buyer to ask by wire for such instructions, confirming by letter and then failing to receive them may upon wire notice, given forty-eight hours in advance, through any recognized cotton oil broker in good standing, buy the oil contracted for, holding the seller for any loss and expense incurred in such repurchase and accounting to him for any profits earned in it over the contract price."

"Section 1. Rule 25. Failure on the part of the buyer to forward cars in the proper time and give due notice thereof shall entitle the seller, at his option, to cancel the contract."

About November 1st the Sherman Company wrote the Tecumseh Company that it

had resold these three cars of oil to Peet Bros. Manufacturing Company, of Kansas City, and asked for delivery as early in the month as possible. The Tecumseh Company acknowledged receipt of this letter and notified the Sherman Company to have two cars at Oklahoma City during the first half of November for loading by the Southwestern Cotton Oil Company, from whom the Tecumseh Company had purchased two tanks of oil, and to have the other car at Tecumseh on November 9th for loading by the Tecumseh Company. It may be inferred, though the evidence is not very full as to this point, that under the contract of resale from the Sherman Company to Peet Bros. Manufacturing Company said Peet Bros. Company was to furnish the cars for loading said oil, and that the cars that were furnished were furnished by Peet Bros. Manufacturing Company on this contract. The Sherman Company instructed the Tecumseh Company to load said cars on arrival and ship to Peet Bros. Manufacturing Company "in accordance with their instructions, making draft on us at Sherman, in accordance with the terms of our contract." One car was duly delivered under the contract; another was loaded and shipped from Oklahoma City. The Southwestern Company, which loaded this car, drew draft on the Tecumseh Company with bill of lading attached. The Tecumseh Company paid this draft and in turn drew draft on the Sherman Company with bill of lading attached. The evidence is not sufficient to show that this draft was ever presented to the Sherman Company for payment. The draft was drawn on November 18th, and on November 19th the bank in which it had been deposited delivered the unpaid draft and the bill of lading back to the Tecumseh Company. It is not shown what became of this car of oil except that it was never delivered to the Sherman Company. On November 19th the Sherman Company was adjudged a bankrupt, and the appellee, O. S. Gresham, was appointed receiver, and later trustee in bankruptcy, and immediately upon appointment was authorized to carry out the contract with the Tecumseh Company, and could and would have paid for said oil if it had been delivered. On November 20th communications by phone and letter were had between the representatives of the Tecumseh Company and the receiver for the Sherman Company, the result of which is summed up in the two following letters:

The Tecumseh Company wrote the Sherman Company as follows:

"Referring to the two tanks crude oil sold you for November shipment, f. o. b. Oklahoma points, kindly furnish tanks on instructions from the Interstate Cotton Oil Refining Company to take care of this sale, in accordance with contract, and make settlement direct with them at our contract price."

To this letter the receiver replied in part as follows:

"This is not satisfactory to me. I find the contract between the Tecumseh Oil & Cotton Company and the Sherman Cotton Oil Provision Company is for three tank cars prime, crude oil; that papers have passed on one tank car, leaving undelivered two tank cars; that one of these two tank cars has been loaded by the Southwestern Cotton Oil Company, Oklahoma City, Okl., to whom the Sherman Cotton Oil Provision Company were instructed to forward tanks; that the bill of lading and invoice were presented to the Sherman Cotton Oil Provision Company on the evening of the 18th instant for payment; and that the party presenting the invoice was requested to present them the next morning for payment, to which he agreed. The terms of this contract were sight draft, bill of lading attached, and I demand that papers be passed through the bank in accordance with the contract on this tank car immediately. I further understand that the last tank car has been forwarded to the Southwestern Cotton Oil Company, Oklahoma City, Okl., in accordance with your instructions, and I demand that papers on this tank car likewise be handed to me promptly on receipt. The contract referred to is between the Tecumseh Oil & Cotton Company and the Sherman Cotton Oil Provision Company, and I cannot agree to look to any one but the Tecumseh Oil & Cotton Company to fulfill their contract, and unless any demands are complied with and I am immediately advised of your intention to so comply, I will be compelled to protect the equity of the Sherman Cotton Oil Provision Company in this transaction by proceeding in accordance with the rules governing this transaction."

Nothing further appears to have been done by either party in reference to the matter until on December 1st the Tecumseh Company notified the receiver that it had canceled the contract "account your noncompliance with the contract."

This suit was brought by the said O. S. Gresham, trustee, to recover as damages the difference between the contract price of the two undelivered tanks of oil and the market value of same at the time when the oil should have been delivered. Under appropriate pleading by the respective parties, evidence of the foregoing facts, and such other facts as we may state in our discussion of the case, was introduced, and on the close of the evidence the court instructed the jury to render a verdict for the plaintiff for the sum of $3,853.18, this being shown to be the difference between the contract price and market value of the oil, and there being no issue as to such matter the controversy being as to liability.

Two assignments are presented: One that the court erred in refusing to give appellants requested peremptory instruction, and the

other complaining of error in the giving of the peremptory instruction for the plaintiff. The same questions, to a large extent, are presented under both assignments, and we may dispose of them by a general discussion.

[1, 2] One proposition made under the assignments is that the request made by the appellant company to furnish tank cars on instructions from the Interstate Cotton Oil Company was a sufficient offer by the Tecumseh Company to perform the contract, and that it was discharged on refusal of the trustee to accept the oil thus tendered. In this connection it was shown that the Tecumseh Company had purchased two tanks of oil from the Interstate Company for delivery at Guthrie, Okl., a common point, and that such oil "could have been delivered on this contract." If the rights of the parties are to be determined by the terms of the contract, without reference to any usage or custom, it is clear that the letter of November 20th is not a legal offer on the part of the Tecumseh Company of compliance with the contract. There was nothing in the contract that would authorize the Tecumseh Company to substitute some other party in its place and require the buyer to deal direct with such party in receipt of instructions for delivery of the oil or settlement therefor. There were no contractual relations between the Sherman Company and the Interstate Company, and the Tecumseh Company was not authorized by the terms of the contract itself to require the Sherman Company to assume such relations and deal "direct" with the Interstate Company as was demanded by the Tecumseh Company in this offer. But the appellant contends that "under the usages and customs of the trade" it had the right to satisfy its contract in this way. If we concede that a showing of such a custom would be permissible under the terms of the contract, the evidence is not sufficient to establish that such usage and custom existed. The evidence is sufficient to show that in such contracts the seller may deliver oil made by other mills and require the buyer to send his cars to be loaded by such other mills, but the same witnesses who testified as to such custom further testified that under the usage the purchaser could not be required in such case to deal "direct" with the third person, as was proposed by appellant. But, even if the appellant could, in the first instance, have demanded that the Sherman Company furnish cars to and take delivery from the Interstate Cotton Oil Company and settle with it, as was proposed, it could not do so in this case if the trustee had the right (a matter we will presently consider) to demand that delivery be made in the tank cars already furnished. Those cars were furnished on notice given by the Tecumseh Company under the rule we have quoted, and the Sherman Company could not, under such circumstances, refuse delivery at such time and place and demand that cars be furnished at some other place.

[3] Another proposition presented under these assignments is that these two tank cars belonged to Peet Bros. Manufacturing Company; that the receiver had no authority to use them for acceptance of the oil; that he offered no other cars, and thus failed to furnish cars for the shipment, and the appellant had the right to cancel the contract for this reason. It appears from the evidence that the trustee rejected the contract with Peet Bros., but the evidence does not disclose when this rejection was made. It does appear that the receiver was, immediately after his appointment, authorized to carry out the contract of purchase with the Tecumseh Company, and to this end to pay the draft against the car that had already been shipped, and it may be inferred that the rejection of the contract with the Peet Bros. Manufacturing Company was made later. While the tank cars may have been furnished by Peet Bros. Manufacturing Company, this was done under a contract between the Sherman Company and the said manufacturing company, and the fact remains that the Sherman Company had caused the cars to be furnished under its own contract with the Tecumseh Company. One of these cars was already in use, being loaded and presumably on its way to Kansas City, and the other furnished and ready for filling. The loaded car was under the control of the possessor of the bill of lading issued by the railway company, and the receiver was, under the contract, entitled to this control on payment of draft for the purchase price due the Tecumseh Company. As to this car it would seem clear enough that the appellant company could not deny the right of the trustee to the use of the car and at the same time appropriate it to his own use, by retaining the bill of lading and making its own disposition of the car of oil. The right to the use of both cars was dependent upon the terms of the contract between the Sherman Company and Peet Bros. Manufacturing Company. Just what this contract was does not appear, except that the Sherman Company was selling the oil to Peet Bros. Manufacturing Company, and that said manufacturing company was to pay therefor the sum of 34½ cents per gallon. The manufacturing company does not appear to have been objecting to the oil being loaded into these cars; the settlement of the right as to the use of the cars was a matter for adjustment between the Sherman Company and the manufacturing company. The appellant did not refuse to deliver the loaded car, or load the other one, on the ground that the cars belonged to Peet Bros., and that the trustee had no right to use them. If any such objection had been raised at that time, it might possibly, if it had been shown to be

a valid one, have been met in some way, but the appellant did not at that time claim that the Sherman Company had failed to furnish cars at the time and place it had been notified to do so, but insisted that the said company accept delivery of said oil at some other time and place. It is our opinion that the appellant has not successfully maintained this proposition.

[4, 5] The proposition just discussed is followed by another, to the effect that, since Peet Bros. Manufacturing Company had furnished the cars under the contract with the Sherman Company, it had the right to insist on delivery of the oil to it upon acquisition by the receiver, and that, if this had been done, the receiver would have sustained a loss on the transaction, so that he suffered no damages from the appellant's refusal to deliver the oil. This contention is based on the fact that Peet Bros. Manufacturing Company was to pay the Sherman Company 34½ cents per gallon for the oil, while the Sherman Company was to pay the Tecumseh Company 35 cents per gallon therefor. A trustee has the right to accept or reject the executory contracts of the bankrupt, but it may be true that the trustee's use of the cars would be such an acceptance of the contract with Peet Bros. Manufacturing Company as would preclude a subsequent rejection. So that one premise of the proposition, to wit, that the receiver or trustee would have been bound to have delivered the oil to Peet Bros. Manufacturing Company after accepting it loaded in cars belonging to said company, is supported by some reason. But, if we concede that this premise is established, yet the conclusion contended for by appellant does not follow. It is true that the trustee would not, in such event, have made a profit on the whole transaction, and would have even sustained a slight loss. On the other hand, the failure to deliver the oil and the final rejection of the manufacturing company's contract subjected the bankrupt's estate to the liability of a claim for damages on the part of Peet Bros. Manufacturing Company for a breach of its contract, the measure of which would be the difference between its contract price and the market value of the oil, and perhaps, in addition, compensation for the expense, etc., incurred in furnishing the cars for receipt of the oil; for, while a trustee may not be forced to carry out an executory contract, the estate is not by its rejection released from liability for its breach. Central Trust Co. v. Chicago Auditorium Association, 240 U. S. 581, 36 Sup. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580; Planters' Oil Co. v. Gresham, 202 S. W. 154, § 17; Collier on Bankruptcy (12th Ed.) pp. 968, 969. So the fulfilling of the contract with Peet Bros. Manufacturing Company would have saved the bankrupt estate from this liability, and in this way there was a consequent damage from the failure of the appellant to deliver the oil. Gresham v. Tecumseh Oil & Cotton Co., 211 S. W. 458. It is true that such case was decided on the theory that it was shown that the oil would not have gone to the buyer, but the reasoning in that case, in connection with our conclusion as to liability of the bankrupt estate in case the oil was not delivered to the buyer, supports our decision of this proposition.

It is also urged that the evidence shows that the loaded car was actually shipped and delivered to Peet Bros. Manufacturing Company under the contract, and the judgment in effect makes the appellant responsible for the delivery of four cars instead of three. The evidence does not support this conclusion. As we have seen, it does not appear what became of this car of oil; but it does appear that the appellant had possession and control of it through the possession of the bill of lading, and presumably disposed of it to its own advantage. It refused to deliver the bill of lading to the trustee, and did not at the time claim that the car had been delivered to Peet Bros. or to the trustee in satisfaction of the contract, but recognized that it still owed two cars of oil on this contract.

[6] Another contention made by appellant is that the Sherman Company "prior to bankruptcy failed and refused to pay for said tank car of oil on demand therefor, and this operated as a repudiation of said contract, especially as to said one tank car." We think the evidence is also insufficient to support this claim. The plaintiff offered testimony to the effect that on the afternoon of November 18th a clerk from the office of the Tecumseh Company presented to a clerk in the office of the Sherman Company an invoice of a car of oil with bill of lading attached; that the manager of the Sherman Company was at such time out of the office temporarily, the Tecumseh Company clerk had no authority to make such payment, and the employee of the Tecumseh Company promised to return the next morning to receive payment. The testimony offered by the Tecumseh Company tends to contradict the statement that any one from its office presented such invoice to the Sherman Company for payment, and is to the effect that a draft on the Sherman Company with bill of lading attached was deposited in the Merchants' & Planters' Bank at Sherman on November 18th, and was returned by the bank to the Tecumseh Company on the next day unpaid. The draft was introduced in evidence, and there is no notation of refusal of payment on it, and there is no evidence that the bank presented it to the Sherman Company for payment, and on November 20th the Tecumseh Company was not claiming that the contract had been canceled by any failure or re-

fusal on the part of the Sherman Company to make payment for this oil.

We find no reversible error presented by any of the propositions made under the two assignments, and the judgment will be affirmed.