## HOLLANDSWORTH v. WILLIAM MEAD TIE CO.

Circuit Court of Appeals, Sixth Circuit.
April 24, 1928.

No. 4863.

1. Trial ⟞11(2)—On transfer to equity of cause filed at law, chancellor could decide both equitable and legal issues.

Where action was filed at law, but on filing of cross-complaint general jurisdiction in equity was conferred, and cause was transferred to equity, chancellor had right to decide, not only the equitable issues, but the legal issues as well.

2. Appeal and error ⟞847(1)—Judgment in equity in cause transferred from law side held reviewable.

Where suit was filed at law, but on filing of cross-complaint general jurisdiction in equity was conferred, and cause transferred to equity, general judgment in equity was reviewable, as in a cause presenting only equitable issues.

3. Contracts ⟞10(5)—Purchase of land, induced by promise to take all ties produced therefrom, held sufficient consideration to support promise, and contract did not lack mutuality.

If plaintiff, contracting with defendant to sell all ties manufactured from certain tract of land, was induced to purchase such tract because of defendant's promise to take all ties produced from such tract, plaintiff's purchase of the tract was sufficient consideration to support

such promise, even though plaintiff was not obliged to make or deliver any ties, and hence contract was not lacking in mutuality.

**4. Sales �køø384(1)—On breach by buyer of contract to purchase all ties produced from certain tract, seller was entitled to damages for refusal to accept all ties within specifications of contract.**

If defendant, who contracted to purchase all ties produced by plaintiff from certain tract of land, which plaintiff purchased by reason of such contract, breached contract and refused to accept ties, plaintiff may recover, not only damages for refusal to accept ties ready for delivery, but damages for refusal to accept all ties within specifications of contract.

**5. Contracts �køø10(1)—Contract, consideration for which was mutual promises, will not be enforced in equity, so far as it is mutually executory.**

A contract depending for its validity of consideration on mutual promises alone will not, so far as it is mutually executory, be enforced in a court of equity.

**6. Sales ⊛ køø153—Buyer's letter, refusing further deliveries after certain date, held renunciation of contract, obviating necessity of further tender by seller.**

Letter by buyer, contracting to accept all ties produced by seller from certain tract of land, refusing any further deliveries of ties after certain date, constituted renunciation of contract, obviating any further necessity of tender of ties by seller.

**7. Sales ⊛køø374—On buyer's renunciation of contract, seller held entitled to treat contract as repudiated and to sue for damages.**

Where buyer, agreeing to purchase all ties produced by seller from certain tract of land, renounced contract, seller had right to treat contract as repudiated, and sue for damages sustained by buyer's failure to carry out portion of contract seller had performed, notwithstanding that buyer stated that it would try, but would not agree, to take ties seller loaded before certain date, since seller was under no obligation to accept delivery conditions which were outside of contract.

**8. Sales ⊛køø153—Seller, having ties ready for delivery when buyer repudiated contract, must be regarded as having executed contract as to such ties, notwithstanding no tender of ties was made to buyer.**

Where buyer agreed to purchase all ties produced by seller from certain tract of land, and, on date when contract was repudiated by buyer, seller had on hand number of ties manufactured from tract which were never taken by buyer, as to such ties seller must be regarded as having executed contract, since tender of ties would have been useless, in view of buyer's repudiation.

**9. Sales ⊛køø372—Mutual mistake in contract held not to absolve buyer from liability for failure to perform part of contract executed by seller before buyer's repudiation.**

Though contract for sale of ties contained mutual mistake, buyer is liable to seller for failing to perform its part of contract that had been executed by seller before buyer's repudiation of contract.

In Error to the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Action by E. L. Hollandsworth against the William Mead Tie Company. Decree for defendant, ₁and plaintiff brings error. Reversed and remanded for further proceedings.

George B. Martin, of Catlettsburg, Ky., and James H. Strickling, of Huntington, W. Va., for plaintiff in error.

Simeon S. Willis, of Ashland, Ky., for defendant in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. Plaintiff in error, Hollandsworth, filed this suit against defendant in error, William Mead Tie Company, to recover damages for the breach of a contract.[1] The tie company denied the breach, and by counterclaim sought a reformation of the contract on the ground of mutual mistake. The mistake alleged was the omission from the contract of a clause providing that if the Chesapeake & Ohio Railway Company reduced the prices that it was paying for cross-ties, the prices that defendant would pay should be reduced accordingly. Issue was joined on this equitable defense,

---

[1] "This contract, made and entered into this 8th day of April, 1920, by and between E. L. Hollandsworth, Huntington, W. Va., party of the first part, and William Mead Tie Company, Ashland, Boyd County, Ky., party of the second part, Witnesseth:

"That whereas, the party of the first part has this day bought a certain boundary of timber from the McClure heirs at Gallup, Ky.; and whereas, the party of the first part has sold to the party of the second part all the ties that he manufactures from the above boundary of timber at the following prices:

| Grade | U.A. | WD | TA | TC | TD |
|---|---|---|---|---|---|
| 1 | .90 | .70 | .80 | .70 | .70 |
| 2 | 1.50 | .85 | .95 | .85 | .85 |
| 3 | 1.30 | 1.00 | 1.20 | 1.00 | 1.00 |
|  | 1.50 | 1.20 | 1.40 | 1.20 | 1.20 |
|  | 1.70 | 1.35 | 1.60 | 1.35 | 1.35 |

"The party of the second part agrees to pay the party of the first part 5 cents addition for loading and 5 cents additional commission, to be added to the above prices. If the C. & O. R. R. raises the prices, then the party of the second part agrees to raise and pay the same price to the party of the first part that the C. & O. is paying at the time the ties are loaded.

"The party of the second part agrees to take all ties from #3–#2 and #1–8' long at 5 cents less than the price paid for the same kind of ties 8½' long.

"The party of the second part agrees to pay the party of the first part cash for the ties as soon as they are loaded and inspected by the railroad inspector, who is sent there by the party of the second part to load the ties."

and by agreement the cause was transferred to the equity docket for trial. Upon the trial the equity issue was not determined, but judgment was given for defendant, on the ground that plaintiff had not proved that defendant had breached the contract relied upon in the petition.

[1, 2] A primary question raised by defendant is that, as there were no findings of fact or requests therefor in the lower court, this court cannot review the facts or conclusions of law on which the trial court based its judgment. The law cases cited in support of this contention—Law v. United States, 266 U. S. 494, 45 S. Ct. 175, 69 L. Ed. 401, Fleischmann Construction Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624, and United States v. Gordin (6 C. C. A.) 9 F.(2d) 394— do not apply to a case presenting both equitable and law issues and which by agreement of parties was transferred to and tried in equity. This suit was filed at law, but upon the filing of the cross-complaint general jurisdiction in equity was conferred, and upon the transfer of the cause to equity the chancellor, in our opinion, not only should have decided the equitable issue but had the right to decide the legal issues as well. Whether under Liberty Oil Co. v. Condon National Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232, any law issues that remained after the disposition of the equitable issue would have been triable by a jury, we do not determine. It is sufficient to say that general equity jurisdiction was conferred by the cross-complaint, and the general judgment in equity may be reviewed as in a cause presenting only equitable issues.

[3-5] It is further contended by the defendant that the contract was lacking in mutuality in that it did not obligate the plaintiff to make or deliver any ties. Upon this point there was some evidence tending to show that plaintiff was induced to purchase the McClure tract of land from which the ties were to be taken because of the promise of the defendant, incorporated into the written contract, to take all the ties that he produced from that tract. If that is so, the purchase of the land was a sufficient consideration to support defendant's promise, even though plaintiff was not obligated to make or deliver any ties. Hunt v. Stimson (6 C. C. A.) 23 F.(2d) 447. And in this view, if the defendant breached the contract, or refused to inspect and accept ties that were ready for delivery, plaintiff would be entitled to recover, not only the damages that he sustained because of the refusal of the defendant to accept ties then ready for inspec-

tion and delivery, but also such damages as he sustained by reason of its refusal to accept all the ties within the specifications of the contract that he would have manufactured and delivered from the McClure tract. The averments of the petition are sufficient to support a claim for damages of this kind; but the evidence as to whether the defendant promised to take all the ties and thus induced plaintiff to purchase the land is too obscure to permit of our passing on that question.

[6, 7] We therefore leave the question of consideration to be determined by the lower court on another trial, and proceed to consider the case under defendant's view of the contract; that is, that it depended for its validity of consideration upon mutual promises alone. Such a contract, so far as it is mutually executory, will not be enforced in a court of equity. Loudenback Co. v. Phosphate Co. (6 C. C. A.) 121 F. 298, 61 L. R. A. 402; Lima Locomotive & M. Co. v. National Steel Co. (6 C. C. A.) 155 F. 77, 11 L. R. A. (N. S.) 713; Campfield v. Sauer (6 C. C. A.) 164 F 833; Pittsburg Plate Glass Co. v. Neuer Glass Co. (6 C. C. A.) 253 F. 161. This contract was not, however, executory as to the ties that were manufactured prior to plaintiff's receipt of defendant's letter of March 10, 1921, renouncing the contract.

Prior to that date defendant had accepted and paid for all ties produced from the McClure tract and delivered to it. On that date it wrote the following letter to plaintiff and its other customers:

"We are very sorry to say that we have just received notice that after March 28 that they will not receive any more ties from us. Inasmuch as the C. & O. Railway has taken off their inspectors and have ceased to take any ties, we think that it is best for us to make preparations not to accept any ties after that date.

"If you have any ties that you have decided to have loaded on or before that date, and will advise us how many you will have and at what point, we will try our best to load them, but we do not agree to accept them as to all who want their ties taken up by this date, but the writer will do anything possible to take care of all he can.

"The price is to be $1.40 and so on down for treatment ties, and $1.55 and so on down for white oak."

This letter was a renunciation of the contract, obviating any necessity of further tender of ties by the plaintiff. Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953; Central Trust Co. v. Chicago Auditorium Ass'n, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed.

811. Upon its receipt the plaintiff had the right to treat the contract as repudiated, and to sue for such damages as he had sustained by reason of defendant's failure to carry out that part of the contract that plaintiff had then performed; and this is true, notwithstanding the statement in the letter that, "if you [Hollandsworth] have any ties that you have decided to have loaded on or before that date [March 28], * * * we will try our best to load them, but we do not agree to accept them," for plaintiff was under no obligation to accept delivery conditions which were outside the contract as made.

[8] It is said for defendant, however, in this connection, that plaintiff did not perform any part of the contract that defendant did not also perform, because plaintiff, at the time the letter was received, had not tendered any ties at the railroad, and did not thereafter tender any that defendant did not inspect and accept. This contention assumes that it was plaintiff's duty, under the contract, to deliver the ties at the railroad. We do not find it necessary to decide that question; but we may assume that such was his duty, and yet it was not his duty to deliver them within any specific time, or subject to defendant's rights to choose whether it would or would not accept them. Defendant purchased all the ties that plaintiff manufactured from a certain tract of land, the McClure tract, and on March 10 plaintiff had on hand a considerable number of ties manufactured from that tract which were never taken by defendant. As to those ties the plaintiff, in our opinion, must be regarded as having executed the contract, for, even if it is to be construed as providing that he would make deliveries at the railroad, he was not obliged to agree to or to perform the wholly new conditions of delivery set out in the letter of March 10—that is, complete the deliveries by a fixed date—or, in view of that letter, to do the useless thing of making a tender of the ties that defendant had said that it would not accept.

[9] As this case now stands, it is not for us to determine whether the clause set out in the counterclaim was omitted from the contract by mistake, or, if so, whether defendant had the right to cancel the contract if the Chesapeake & Ohio Railway Company stopped buying ties, or at least, as defendant contends, to suspend its execution until the Chesapeake & Ohio began purchasing them again. We observe in the record that one of the tiemen of the Chesapeake & Ohio testified that that company did not stop buying ties at all, although it did reduce the price on January 15, 1921. This question and that concerning the reformation of the contract are material only to the measure of damages, for, if it be true that there was a mutual mistake in the contract set up in the petition and that the Chesapeake & Ohio Railway Company did reduce the price of ties in January of 1921, defendant would still be certainly liable for failing to perform its part of the contract that had been executed by the plaintiff, and perhaps, as has been stated, for failing to perform the full extent of its promise—that is, liable according to the written contract as reformed.

The decree is reversed, and the cause remanded for proceedings consistent with this opinion.