### In re SCHUYLER, CHADWICK & BURNHAM et al.

### No. 240.

Circuit Court of Appeals, Second Circuit.

Feb. 14, 1933.

Blake & Voorhees, of New York City (Tracy S. Voorhees, of New York City, of counsel), for appellant.

Cotton, Franklin, Wright & Gordon, of New York City (Edward L. Williams, Paxton Blair, and James D. Wise, all of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The appellant filed a claim against the bankrupts for the value of four thousand eight hundred and thirty-six shares of stock of the Singer Manufacturing Company which were in his account with the bankrupts on September 21, 1931, when, at about 10:42 a. m., a petition in bankruptcy was filed. He was a margin creditor of the bankrupts, and signed a consent to rehypothecate this stock. Singer Manufacturing Company stock was traded on the Curb Exchange during September, 1931, in units of ten shares and a maximum single trade was one hundred shares. A normal day's business was from ten to thirty shares, and some days passed without a sale. Larger blocks were traded in over the counter sales. It was closely held stock, and little was offered for sale. A large number of shares offered for sale would break the market, and offers to purchase an accumulation of several thousand shares would force the stock up unduly high. . Ten shares were sold on the morning of September 21 at $190 each. During September, the market varied between a low of 200 and a high of 270. Sales negotiated by the bankrupts during the month were about 60 per cent. of the total. There was an over the counter sale of one thousand shares on September 14th to the Singer Man-

ufacturing Company at 180 per share. The appellee's expert testified that a fair approximation of the market value of this stock was the curb price. Such sales were under ordinary conditions, and were persuasive evidence of fair market value. At 190 per share, the stock was worth $918,840; at the referee's value, confirmed later by Woolsey, J., it was fixed at 130 per share, or $628,680—a difference of $290,160.

The bankrupts had rehypothecated these shares in various of their general loans, as part of the collateral for very large indebtedness. On the day of the failure, the banks sold part of this stock, and such distress sales lowered the market to as low as 125 a share. The Brooklyn Trust Company held 865 shares of the appellant's stock on a loan margined to the extent of 50 per cent. It sold 750 shares during the afternoon of the day of the failure. The sales on that day totaled 760 shares. In October. the price advanced to 175, and in November to 195 a share, all within sixty days after bankruptcy. At 190 a share, the appellant had an equity in the stock, above his indebtedness to the bankrupts, of $106,000.

The bankruptcy constituted an anticipatory breach of the contract between the parties. Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580. The court below based its decision on the average price of the sales made by the pledgee, Brooklyn Trust Company. It disregarded the other evidence of sale, one on the morning of the bankruptcy. Sales thus forced by foreclosure of liens on the day of the bankruptcy should not be considered conclusive. It is not a sale by a willing but uncompelled owner to a buyer uncompelled. The market value is determined by what a prudent owner would sell for at a sale if he had the power of election as to the time and terms. Logan v. Com'r, 42 F.(2d) 193 (C. C. A. 2); Heiner v. Crosby, 24 F. (2d) 191 (C. C. A. 3); Walter v. Duffy, 287 F. 41 (C. C. A. 3); Weed v. Lyons Co. (D. C.) 294 F. 725. Sales of the kind made by the Brooklyn Trust Company were referred to in Galigher v. Jones, 129 U. S. 193, 200, 9 S. Ct. 335, 337, 32 L. Ed. 658, where the court said: "The real injury sustained by the principal consists not merely in the assumption of control over the stock, but in the sale of it at an unfavorable time, and for an unfavorable price." See In re Salmon Weed & Co., 53 F.(2d) 335, 79 A. L. R. 379 (C. C. A. 2). The consent to pledge the stock for the bankrupt's loan was no justification for

fixing the distress sale price as the market value.

The bankrupts repledged this customer's security as collateral for its own loan, and the sale by the bankrupts' pledgee constituted a conversion by the broker. Such sale is not rendered justified by the fact that the repledge may have been rightful in the first instance. Meyer on the Law of Stock Brokers 1931, p. 554.

The price at which willing and uncompelled buyers and sellers meet has been taken by the courts as the best evidence of market value. Logan v. Com'r; Heiner v. Crosby; Walter v. Duffy; Weed v. Lyons Co., supra. In making reparation for damages, the injured party ought to be put in the same condition, so far as money can do it, in which he would have been if the contract had been fulfilled or the tort had not been committed, or the loss had been instantly repaired when compensation was due. Suydam v. Jenkins, 5 N. Y. Super. Ct. (3 Sanf.) 620; Sutherland on Damages (4th Ed.) 1916, p. 369. The sales made immediately after the failure were under totally different conditions from those prevailing before suspension or bankruptcy of the firm became known. At that time conditions were materially changed.

The sale of this stock constituted a breach of contract and a serious wrong to the appellant. In re Kardos, 27 F.(2d) 690 (C. C. A. 2). The bankrupts may not profit by this wrong, and particularly they may not take advantage of the lowered prices, due to forced sales, in ascertaining the damages the appellant sustained. Accepting the sales prices made within a reasonable time before bankruptcy and considering the rise in prices thereafter, we think a price of 190 per share represents the market value on the day of the breach of contract.

Other questions raised before the referee but undecided will be referred for further consideration.

Order reversed.