**In re RAY LONG & RICHARD R. SMITH, Inc.**

**No. 216.**

Circuit Court of Appeals, Second Circuit.
March 14, 1938.

**526**

Maxwell Barrett, of New York City (Harold G. Aron, of New York City, of counsel), for appellant.

Henry L. Flattau and William A. Walling, both of New York City, pro se (Henry L. Flattau and Monroe Chapin, both of New York City, on the brief), for appellees.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

While Ray Long & Richard R. Smith, Inc., now bankrupt, was trying to meet its liabilities, it entered into a contract with the claimant on March 23, 1933, under which the claimant was to endeavor to develop its business and to solve certain problems which presently confronted it. All its issued and outstanding capital stock was deposited with named depositories to be held for the period and the purposes of the agreement, and no additional capital stock was to be issued without the claimant's consent. Unless canceled within ninety days, the relationship between the parties was to continue "until such times as we (the first above named) shall have discharged all existing obligations and are in a position to meet our trade obligations as they mature." If Ray Long & Richard R. Smith, Inc., should cancel the contract within ninety days, the claimant would be entitled to be paid $1,000. But, while the contract remained in force, the corporation to be helped was to pay the claimant currently for its out-of-pocket expenses not to exceed an average of $200 a week as certified by a committee named. Upon the termination of the contract by performance by the claimant, i. e., whenever Ray Long & Richard R. Smith, Inc., should have discharged all existing obligations and should be in a position to meet its trade obligations as they should mature, the claimant was given the right to withdraw for its compensation 25 per centum of the shares deposited.

While both parties to the contract were trying to carry it out, an involuntary petition in bankruptcy was filed against Ray Long & Richard R. Smith, Inc., on April 26, 1933. The petition was at first resisted by the alleged bankrupt, but long after the expiration of ninety days during which the above-mentioned contract could be canceled by it upon the payment of $1,000 it consented to the adjudication and that followed.

The claimant had been paid in full for all due it for expenses up to the date of the petition in bankruptcy, but thereafter continued to try to perform the contract, and in so doing claims to have incurred additional expense for a period of forty-two weeks as follows:

| | |
|---|---|
| (a) Compensation of A. J. Hammerslough for (42) weeks at $150.00 per week | 6,300.00 |
| (b) For counsel and advisory services to H. G. Aron | 1,750.00 |
| (c) Due to Ralph S. Foss | 250.00 |
| | 8,300.00 |

It has also claimed as damages on account of its right to compensation and as the value of 25% of the shares of stock of the bankrupt as of the date of adjudication — 58,560.79

making a total claim of — 66,860.79

As this is not an appeal from the order of adjudication which is final for present purposes, we are now concerned only with whatever right the claimant has to prove its claim against the estate of a bankrupt. The claimant, however, does not agree that when the involuntary petition was filed or that when the adjudication took place Ray Long & Richard R. Smith, Inc., was insolvent. And it is apparent that it must prove that insolvency did not exist at the time it claims the contract was broken by the bankruptcy in order to show that the common stock to which it would have been entitled upon performance had any value to give substance to the claim for money damages it now makes in this respect. We do not find it necessary to decide whether as a claimant it is estopped from so doing in that the adjudication upon the involuntary petition, on which its right to prove its claim in bankruptcy in part rests, was dependent for validity upon the fact of insolvency.

 The part of the claim which was based upon the supposed right of the claimant to reimbursement for its so-called expenses incurred in trying to perform the contract after the petition in bankruptcy was filed was properly expunged. The theory upon which the entire claim is based is that the bankruptcy of Ray Long & Richard

R. Smith, Inc., was an anticipatory breach of its contract giving the claimant the right to prove its damages for that breach as of the date of petition filed. Central Trust Co. v. Chicago Auditorium Ass'n, 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811. Having taken the position of a claimant against the estate of the bankrupt, the appellant can now have only the rights of a creditor as of the date of petition filed. It must show that the claim arising from the breach of contract on which it relies was provable as of the date of the filing of the petition in bankruptcy. Zavelo v. Reeves, 227 U.S. 625, 33 S.Ct. 365, 57 L.Ed. 676, Ann.Cas.1914D, 664.

Obviously subsequent expenses incurred in an attempt to perform the contract, regardless of the breach, are not damages flowing from the breach and due and owing as to the date of the petition. But we need not here put the affirmance of the order expunging this part of the claim wholly upon the difference as to provability between damages flowing from a breach, treated as such by the claimant, as of petition filed and so-called damages consisting of later expenditures in a futile attempt to perform regardless of the bankrupt's breach.

It was found below on evidence supporting the finding that: "An answer was filed to the involuntary petition in bankruptcy and pending hearings on the issues thereby raised, several motions for the appointment of a receiver were made. Upon one or more occasions on the hearing of the said motions, petitioner for review, in opposing the appointment of a receiver, agreed, if left in control and operation of the bankrupt, that petitioner for review would act without compensation pending adjudication, if one be had, and the appointment of a trustee. * * * So much of the claim $8300. as was expunged, was in effect compensation during the time between the filing of the petition and the order of adjudication, which was entered on March 9, 1934, upon the withdrawal of the answer." So that, even though that part of the claim had been provable as a matter of law, the proof failed on the merits. For this reason the appellant would not have been entitled, and indeed it did not seek, to have the claim allowed as an expense of administration.

■ In reliance upon the decision in the case of In re Walker Grain Co., D.C., 19 F.2d 795, the claimant was denied the opportunity to prove the remainder of the claim until it deposited $100 as security for the payment of stenographer's fees in the event that its proof failed to entitle it to have the claim allowed. No. 10 of the General Orders in Bankruptcy, as amended, 11 U.S.C.A. following section 53 provides, inter alia, that "before incurring any expense * * * in perpetuating testimony, the clerk, marshal, or referee may require, from the bankrupt, debtor, or other person in whose behalf the duty is to be performed, indemnity for such expense." But here there is nothing to show in respect to any stenographer's fees that the claimant is within the phrase "other person in whose behalf the duty is to be performed." We are not prepared to hold that a contested claim may not be proved in bankruptcy without the services of a stenographer. Nor that a claimant who doesn't at least request that the evidence be taken down by a stenographer can be denied the right to offer his proof of his claim unless he provides security for such expense. In the case above cited the claimants were not required to give security for expenses as a condition precedent to offering proof of the claims. Security for costs was required of creditors who desired to contest the claims.

However, the requirement that this claimant furnish security was, at most, harmless error. This part of its claim was for the compensation to which it would have been entitled upon its performance of the contract. By the terms of its contract its compensation was made wholly contingent upon successful performance to the point where the corporation whose business was being conducted should have discharged all existing obligations and be able to meet its trade obligations as they matured. Not until the claimant had brought that about would it have earned the stock no matter what its efforts might have been. Nor has it shown that the filing of the petition was due to any misconduct on the part of the bankrupt. Adjudication was resisted for more than a year thereafter, and there is no reason to believe that it could have been prevented by the bankrupt even if it had not withdrawn its opposition.

■ But, even assuming for the moment that the claimant could have been able to perform and was prevented only by the anticipatory breach which occurred by reason of the bankruptcy which in turn could

have been prevented because the corporation was solvent, we think the claim was too contingent to be valued for proof. Dunbar v. Dunbar, 190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084. The value of the common stock when earned would depend largely upon what assets the corporation had left after all its existing obligations were discharged and it was in a position to meet its trade obligations as they matured. What those assets might have been is pure speculation. In so far as the value of the stock might depend upon the business prospects of the corporation after performance of the contract at some indefinite time in the future there could also be no more than a guess. All this being so, the value of the claimant's possible future right to the stock as of the time the contract was broken was too contingent to be the basis of a provable claim in bankruptcy. See Maynard v. Elliott, 283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028; In re Merrill & Baker, 2 Cir., 186 F. 312.

Order affirmed.