CATTERLIN v. VONEY et al.

(Circuit Court, D. Oregon. March 24, 1910.)

No. 3,099.

1. CONTRACTS (§ 278*)—BREACH—RECOVERY.
　　Where complainant was in default in the performance of his obligations under a mine developing contract, he was not entitled to sue the other party thereon for an accounting.
　　[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1207-1215; Dec. Dig. § 278.*]

2. TRUSTS (§ 145*)—DEFAULT OF TRUSTEE—OBLIGATIONS OF CESTUIS QUE TRUST INTER SE.
　　Where a contract for the development of a mine provided that certain money should be paid to W. by a firm to be checked out by W. on complainant's orders. W. was trustee of the fund for both complainant and the firm, and hence the firm was not liable to complainant for W.'s failure to check out the fund as required.
　　[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 145.*]

3. DAMAGES (§ 118*)—BREACH OF CONTRACT.
　　Where the only relief provided for the second party to a mine developing contract for C.'s failure to make a dividend producing mine out of the property in question was the forfeiture of C.'s stock, such forfeiture constituted their entire measure of damages for C.'s default, both as against him and the mining company.
　　[Ed. Note.—For other cases, see Damages, Dec. Dig. § 118.*]

In Equity. Suit by F. J. Catterlin against Matthew Voney and others for an accounting, in which the Williamsburg Mining Company was made a party defendant. After answering the bill, defendants filed an alleged cross-bill, and subsequently, one White having obtained judgment against the mining company, Voney, Hamilton & Walker sue to enjoin him from sequestering the property of the mining company. Bills dismissed.

J. F. Boothe, for plaintiff.

D. J. Haynes and Lewis C. Garrigus, for Voney, Hamilton & Walker.

J. N. Brown, for Williamsburg Mining Company.

WOLVERTON, District Judge. The Williamsburg Mining Company is an incorporation under the laws of the state of Oregon, having a capital stock of $500,000 divided into 500,000 shares, with a par value of $1 per share. On February 14, 1906, F. J. Catterlin, who claimed to be the owner of 251,000 shares of the capital stock of this concern, entered into an agreement with Voney, Hamilton & Walker, of St. Louis, Mo., a firm consisting of Matthew Voney, Charles E. Hamilton, and James M. Walker.

The agreement purports to be tripartite between Catterlin, of the first part, Voney, Hamilton & Walker, of the second part, and the St. Louis Trust Company, of the third part. By the terms and stipulations of the agreement Catterlin grants unto Voney, Hamilton & Walker the exclusive right, for a period extending to March 14, 1906,

to sell, at not less than 25 cents per share, 150,000 shares of the stock of the mining company then owned by Catterlin, but by him, under said agreement, set aside for the use and benefit of all the stockholders of the concern; the condition being that, after $12,000 has been realized by the sale of 48,000 shares for cash, the balance of the 150,000 shares, to wit, 102,000 shares, shall be at once surrendered to Voney, Hamilton & Walker, and the title thereof shall vest in them. The right granted to sell this stock is termed an "option," and it is further agreed that, concurrently with the acceptance of the option by Voney, Hamilton & Walker, they shall produce a buyer or buyers for not less than 12,000 shares of said stock, together with the purchase price of $3,000 in cash, at the depositary designated; that Catterlin shall deposit the 150,000 shares of stock with such depositary, and, further to secure his faithful performance of the stipulations on his part in the event of the acceptance of the option by Voney, Hamilton & Walker, that he will, within three days after such acceptance, deposit with said depositary 101,000 other shares of the stock of said mining company, the same being also his individual property.

Catterlin further agrees that, in the event the option is accepted, said $3,000 shall be by him, within 30 days after the receipt of the same, invested to secure the equipment of the mine and mill of said mining company with a concentrator; that with the aid of said concentrator said mine will be made to produce, for six months after April 12, 1906, a monthly dividend of one-half per cent. upon the capital stock of the company, the requisite ore being available for the purpose; and that he will, within 30 days after the receipt by him in Portland, Or., of the said sum of $3,000, have in operation said concentrator, and demonstrate by the clean-up at the end of the first month the ability of said mine to produce and yield to the stockholders for the period of six months thereafter a monthly dividend of not less than one-half per cent. on the capital stock, or that he will forfeit said block of 101,000 shares to Voney, Hamilton & Walker, if the sworn statement required to be made on or before April 15, 1906, by the duly accredited representative of both parties does not show that said mine is a dividend producer as stipulated. Catterlin further agrees that he will refrain for six months after the acceptance of the option from presenting against the mining company certain claims owned and controlled by him, aggregating about $9,000, and only in the event that it is shown that said mine is a dividend producer as stipulated shall the depositary place to the credit of Catterlin, in the Merchants' National Bank at Portland, Or., all sums received, and as fast as received, up to the said sum of $9,000, for stock sold subsequent to the sale of the 12,000 shares, and that, as soon as any money is received by Catterlin to the credit of said $9,000, he will apply the same in payment of the indebtedness specified of said mining company; that, in case it is found that said mine is not a dividend producer as stipulated, then the depositary shall return to the several purchasers of stock the proceeds of such sales, upon surrender of the stock, and the title and right of possession of such stock so surrendered shall at once vest in Catterlin.

Catterlin further agrees that six days before the last date of said contingent acceptance of the option he will cause the directors of the mining company to bind themeslves to produce monthly sworn statements touching the expenses and profits of said mine for a period of six months after the installment of the concentrator, and that if, after six months of the operation of said mine, the same is demonstrated to be a failure as a required dividend producer, he will forfeit to Voney, Hamilton & Walker not only said block of 101,000 shares, but also the unsold portion of the block of 150,000 shares of stock, reserving, however, the right to redeem said stock by returning, within 30 days after conclusive demonstration of failure, the purchase price of all stock actually sold and paid for at the office of said depositary. It is further agreed that if, after six months' operation of the concentrator, the said mine is a dividend producer as required, then Catterlin is entitled to a return of the block of 101,000 shares of stock and the unsold portion of the subject-matter of the option, plus accrued dividends on both. A board of arbitrators is then provided, for determining whether, after due trial, the mine has been shown to be a dividend producer as stipulated, in case of a disagreement upon the subject.

If the option is not accepted prior to March 14, 1906, then all stock deposited by Catterlin is to be returned to him.

The depositary named in the agreement refused to accept the obligations imposed upon it, or to become in any way bound by the agreement.

On April 25, 1906, Voney, Hamilton & Walker, acting through Walker, and Catterlin modified such agreement, by stipulating that the parties would accept any other reputable trust company in St. Louis as a depositary under the agreement; that the time allowed for the erection of the concentrator and the commencement of operations should be extended 30 days; that the time for the first report to be made—April 25, 1906—and the time within which Voney, Hamilton & Walker were to make sale of the balance of the 48,000 shares of stock were extended accordingly; that the time within which Catterlin agreed that the mine should be a dividend producer should be six months after the time fixed by the modified agreement for the commencement of the operation of the mine; and that the claims held by Catterlin were not to be prosecuted in the meantime. It was further stipulated that the sum of $3,000, less the sum of $250 then paid to Catterlin, should be sent to James M. Walker, who was authorized to check the same out to the proper officer of the mining company as the same should be needed in payment for the concentrator and improvements at the mine; the receipt of such officer to be a satisfactory voucher to Voney, Hamilton & Walker for such payments, Catterlin to furnish Walker from time to time with statements of amounts of money required, and Walker to honor such statements by making payments as stipulated without unnecessary delay.

This cause originated by the complainant F. J. Catterlin filing a suit in equity in the state court against Voney, Hamilton & Walker for an accounting, and for the recovery of the sum of $943.53, which

sum it is alleged would be found due from the defendants to complainant upon such accounting. The suit is based upon the contract and modification thereof, as above set out. A removal of the cause was had to this court. Subsequently the Williamsburg Mining Company was made a party defendant, and the bill of complaint was amended accordingly. The defendants, after answering the bill, filed what they term a "cross-bill," the arrangement of the parties being the same as in the original bill, whereby Voney, Hamilton & Walker set up the agreement between the firm and Catterlin, and seek a recovery of certain moneys expended upon the mine in providing equipment, machinery, etc., and for labor and outlay connected therewith, amounting to the sum of $2,632.11. Recovery is also sought against the Williamsburg Mining Company.

Somewhat later one H. White obtained a judgment in the state court against the mining company for $11,550, and, he being about to enforce such judgment by execution, Voney, Hamilton & Walker instituted a suit in this court to enjoin him from sequestering the property of the mining company; said firm alleging that whatever rights White might have against said mining company were subordinate to their demand as shown by their cross-bill to the suit of Catterlin.

Eventually all these proceedings were consolidated. The evidence has been taken before a special examiner, and the cause has been submitted after argument of counsel upon such evidence.

On April 11, 1906, the board of directors of the mining company held a meeting, and, among other things, elected James M. Walker a director of the company. The agreement between Voney, Hamilton & Walker and Catterlin was brought to the attention of the board, and Catterlin was authorized to use the $3,000 to be raised by a sale, through Voney, Hamilton & Walker, of 12,000 shares of the capital stock of the company, and all other moneys that might be or become available by reason of said agreement, in the installation of a concentrator and the making of such other improvements as to him, acting in conjunction with Walker, might seem wise. The board, however, disclaimed any purpose or intention of making the mining company a party to the agreement. It is shown by the testimony, and is even admitted by all parties to the controversy, that, while a concentrator was purchased and put in operation at the mine, and other equipment and improvements were added, and much money was expended in operating the mine and the concentrator, Catterlin was wholly unable to make of the mine a dividend producer, as he agreed to do under the terms of the agreement with Voney, Hamilton & Walker. Indeed, no profit of any kind was ever derived from the operation of the mine in pursuance thereof, so that Catterlin utterly failed to perform his part of the agreement in that respect.

By the modified agreement, it will be seen that Voney, Hamilton & Walker were to forward the $3,000 to be derived from the sale of the first 12,000 shares of stock, less $250 theretofore paid to Catterlin, to Walker, who was charged with the duty of checking the same out as needed for making the necessary improvements upon the mine. It is alleged by Voney, Hamilton & Walker that, in pursuance of such

arrangement, said firm paid out for such improvements and labor attending the work $2,632.11, and that, by reason of Catterlin's failure to make of the mine a dividend producer, they are entitled to recover the same from Catterlin and the mining company. By a letter of date August 2, 1906, Catterlin, acknowledging his default, agreed to refund by August 15th whatever portion of the $3,000 was expended by him, and to leave the question of compensation to which Voney, Hamilton & Walker were entitled for their services in selling the stock, and the rate of interest to be allowed buyers on return of stock sold them by Voney, Hamilton & Walker, to a board of arbitrators, and that, in case he was unable to refund the money as agreed, he would forfeit his stock as per the original agreement, without defense or cost of expense on the part of Voney, Hamilton & Walker. Catterlin testifies that Voney, Hamilton & Walker answered this letter, through their attorney, to the effect that they would accept the money paid, with the additional expenses they claimed they were out and the commission, namely, $2,040. It is not clear what is meant by this answer. But I take it that Voney, Hamilton & Walker were willing to accept a refund of the money paid out by them, together with their commissions claimed for the sale of such stock, and this is the theory upon which they base their cross-bill.

I am satisfied that Walker was constituted a manager along with Catterlin to direct the improvements to be made upon the mine and the work to be done in working the mine and reducing the ores. This I deduce from the action of the board of directors of the mining company in electing Walker a director, the modified agreement whereby Walker was made the custodian of the fund, with authority to check the same out as needed, and the testimony of Catterlin saying that Walker had charge of the mine.

I conclude that the complainant Catterlin is not entitled to recover, because: First, it is admitted that he did not perform his part of the agreement in making of the mine a dividend producer, as he stipulated he would do; and, second, Walker was as much a trustee of the fund in question for Catterlin as he was for Voney, Hamilton & Walker, and a refusal or failure of Walker to check upon the fund in his hands would not render Voney, Hamilton & Walker liable to Catterlin.

It seems to be suggested that the only relief provided for on behalf of Voney, Hamilton & Walker, in case of a breach of the agreement on the part of Catterlin, was the forfeiture to them of Catterlin's stock, and hence that Catterlin, by forfeiting his stock, would be entitled to recover what money was obtained for the sale of stock under the so-called option. But it is a rule of law that a party to a contract is never entitled to recover while he himself is in default, and this is Catterlin's condition. Nor do I think that Voney, Hamilton & Walker are entitled to relief against Catterlin or the mine, because, first, they have agreed, in effect, that a forfeiture to them of Catterlin's stock shall constitute the measure of their damages. The agreement evidences a venture on the part of Voney, Hamilton & Walker, as well as on the part of Catterlin, to exploit the mine; they being willing to rely upon the undertaking of Catterlin to make the mine

a dividend producer, and, if he did not, then to accept a forfeiture of Catterlin's stock in discharge of his default. The letter of August 2d, instead of being an agreement to refund, strengthens this view. It constitutes but an offer to refund, along with a proposition to submit the matter of compensation of Voney, Hamilton & Walker for sale of stock, and the interest question to arbitration. This offer was never accepted on the part of Voney, Hamilton & Walker, and hence never ripened into an agreement. It is the latter clause of this offer that emphasizes the foregoing construction of the original agreement, reading as follows:

"If I am unable to refund the money as per contract will surrender stock held by you as forfeited as per contract without defense or any expense whatever to you."

This letter was directed to C. E. Hamilton, it is true; but it was designed for the firm, and has the same effect as if so directed. This last clause in the offer was but a reaffirmance of the condition of the original agreement, to remain in effect in case the offer was not accepted by Voney, Hamilton & Walker, or Catterlin himself was not able to refund by the date designated.

It follows from these considerations that both the bill of complaint and the cross-bill must be dismissed. So, also, will Voney, Hamilton & Walker's bill of complaint against White for an injunction be dismissed. Voney, Hamilton & Walker are entitled to their costs and disbursements against Catterlin. The suits having been consolidated, no costs will be allowed to White.