## WITHERSPOON v. CHOCTAW CULVERT & MACHINERY CO.

### No. 9268.

Circuit Court of Appeals, Eighth Circuit.

Feb. 29, 1932.

A. F. House, of Little Rock, Ark., for appellant.

George B. Pugh, H. T. Harrison, and Thomas S. Buzbee, all of Little Rock, Ark., for appellee.

Before KENYON, VAN VALKEN-BURGH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

The appellee as plaintiff brought this action at law to recover from the appellant as defendant the possession of certain machinery referred to in the record as a gasoline shovel, with certain accessories and appliances. The action was one in replevin, and the property involved was taken under a writ of replevin.

For convenience the parties will be referred to as they appeared in the lower court.

On the 15th of December, 1928, plaintiff entered into a contract with the Arkansas General Construction Company for the sale of the property involved in this action. By the terms of this written contract, the Arkansas General Construction Company as purchaser agreed to pay for the machinery purchased the sum of $11,304.61, of which amount it paid in cash at the time of the execution of the contract $1,032.61, and gave plaintiff its twelve promissory conditional sales notes, each for the sum of $856, matur-

ing, one on or before the 15th of March, 1929, and one on or before the 15th day of each month thereafter until all were paid or otherwise collected in rents, "provided, however, the maturity and payment of interest and principal of said notes are conditioned as follows, to-wit:

"If the purchaser at any time before the maturity and payment of all of said notes or as they may be extended, shall not have work requiring the use of said shovel and equipment, he may give seller written notice of that fact, whereupon the seller shall have the right to lease said shovel and equipment to some other person or persons, for the benefit of purchaser, at a rental of not less than One Thousand Dollars ($1,000.00) for one month, Eight Hundred Fifty Dollars ($850.00) for one to three months, and Seven Hundred Dollars ($700.00) for every period longer than three months, applying the monthly rentals on the monthly notes; but if said machine and equipment cannot be rented upon such terms, maturity of the deferred purchase money notes will be extended or postponed by the seller until such a time as that the machinery can be rented.

"It is understood and agreed that if seller cannot rent said machinery within six months after being notified by purchaser to rent it, the purchaser may thereafter use said machinery without the payment of rentals or purchase money installments, provided if while so using it, seller shall have an opportunity to rent it, the purchaser will either then surrender the machinery to seller, to the end that it may be rented, or will, at its election resume the payments of the monthly purchase money notes and retain the use of the shovel.

"It is further understood and agreed that interest on the deferred purchase money notes will cease at the expiration of eighteen (18) months from the date purchaser gives, seller written notice of the fact that it wishes to rent the shovel. Any of the purchase money notes running beyond that period, whether paid by the purchaser or by rents, will not after said period of eighteen (18) months, bear interest.

"The maturities of the deferred purchase money notes may be extended from time to time if agreed to between the purchaser and seller, but, in all events, any unpaid notes at the time of notifying seller of the fact that the shovel is available for rent will be automatically extended to conform to this agreement and rents collected.

"It is understood that when the seller rents the shovel to some third parties that the purchaser will be required to leave it with the third parties until their rent agreement has expired or until the rent agreement is otherwise canceled. It is understood that the rentals collected will be collected in advance and that the form of lease agreement will be that form that is ordinarily used by the seller in renting equipment, except that it will be sure to contain a provision that if the shovel is placed on work that is impractical or too abusive for the shovel to handle, then it is agreed that the lease contract is cancelled and the shovel returned to the purchasers. In event of this question of abuse or type of work, the parties to determine the question will be bound by arbitration.

"The deferred notes will have written or stamped thereon, 'Subject to the provisions of the written contract of December 15th, 1928.'

"The title to the above described property shall not pass by delivery to the purchaser, but it is expressly retained by and shall remain vested in the seller until the entire purchase price as above set out has been paid in full. However, when the shovel is not actually rented, the same will be in the possession of the purchaser. * * *

"It is understood that the purchaser will pay the rental notes when using the machine providing seller wishes to use it and also providing that it is within a period of six months from the time purchaser is notified that the shovel is available for rent. It is also understood as herein other places provided for that if the shovel is not rented within six months of the date that it is available for rent, then the purchaser can use the same without making any payments thereon, but while using same without making any payments thereon if seller notified purchaser that they have secured a bona fide offer of lease contract, purchaser will release shovel or resume monthly payments."

The machinery was delivered to the purchaser, Arkansas General Construction Company, about the time of the date of the contract, and there had been paid on the purchase price approximately $8,500, which included the notes payable in January, February, March, April, and May. At the time of the maturity of the June note an extension of the remaining notes was granted, and thereafter, pursuant to provisions of the contract, the purchaser gave plaintiff written notice that the shovel was available for rent, and called upon it to rent the same for the credit of the purchaser. This the plaintiff did not do, but under date September 5, 1929, wrote the president of the purchaser, inquiring as to the lo-

cation of the machine, stating that it wished to know "where to carry prospective customers to rent this machine and show it to them."

Thereafter, the exact date of which does not appear in the record, in a suit brought in the United States District Court for the Eastern District of Arkansas, wherein Home Accident Insurance Company was plaintiff, and the Arkansas General Construction Company was defendant, a receiver was appointed of all the property of the Arkansas General Construction Company, with power to demand, sue for, collect, and take possession of all properties, credits, and rights of every description belonging to said corporation. By the order of his appointment, the receiver was allowed six months from the date of his appointment within which to elect to adopt or continue in force, or refuse to adopt or continue in force, any lease or contract not fully performed and pending, but the order provided that none of the receiver's acts or omissions in the performance or failure to perform such contracts should constitute or be considered an election to adopt or an estoppel to renounce any of them.

On the 11th of December, 1929, the receiver, pursuant to order of court, sold to the defendant in this action all equity of the Arkansas General Construction Company in and to the machinery, subject to the lien of the plaintiff for the balance of the purchase price, the purchaser to assume performance of all conditions of the contract under which the machinery was sold. The defendant paid the receiver $1,087.50 as the purchase price, in addition to assuming the performance of all conditions of the contract, and the receiver transferred to her all right, title, and interest of the Arkansas General Construction Company in and to the property, together with all the right, title, and interest of said company in and to the contract of purchase for said property, and covenanted that the property was clear from any claim of the creditors of the company, except the claim of the Choctaw Culvert & Machinery Company. After the purchase of the machinery, defendant notified plaintiff by letter dated December 21, 1929, that she had purchased the equity of the Arkansas General Construction Company in the shovel and contract, and that the shovel had been moved to Little Rock, where it could be better cared for. This letter contains the following paragraph: "Please bear in mind that it is still available for rent, and that it can be shown to prospective customers for its rental at anytime."

A jury being waived, the action was tried to the court, and the issue determined in favor of plaintiff. From this judgment defendant has appealed, contending that under the undisputed evidence judgment should have gone in her favor.

There is no dispute in the evidence, and hence only questions of law are presented. The action, being one in replevin, is strictly a proceeding at law; and the issue to be determined was plaintiff's right to immediate possession, and the question of title is only pertinent as it may bear upon the right of possession.

Plaintiff's right to recover must depend on the strength of its own right to possession, and not on the weakness of defendant's title or right to the property. With these elementary principles in mind, let us examine the contract with a view of determining whether, at the time of the commencement of the action, plaintiff was entitled to the possession of this property, because plaintiff's claim of right to possession is bottomed on the contract.

The contract is a remarkable one, but we must take it as we find it. At least, in an action at law it cannot be reformed nor rewritten; and, in fact, there is no claim that it does not express the intentions of the parties. Under the provisions of this contract, there were dependent covenants and agreements, and it was more than an ordinary conditional sales contract because of the executory provisions prescribing continuing obligations on the part of the seller. True, title to the property remained in the seller, but the right of possession was transferred to the buyer. While the buyer executed certain promissory notes representing the balance due on the purchase price, these notes were executed as a part of the contract of purchase, and there was stamped thereon words indicating that they were subject to the provisions of that contract.

Prior to the appointment of the receiver for the buyer, it had committed no breach of any of the provisions of the contract, but the seller had been called upon to perform its obligation to rent the shovel, if it desired further payments on the purchase price. It had agreed, in effect, that, after notice given, it would rent the shovel and apply the rentals upon the contract price, and, failing so to do, the maturity of the notes was automatically postponed. The contract specifically provides that the purchaser might at any time before the maturity and payment of all the notes, if it did not have work requiring the use of the

shovel and equipment, give the seller written notice of that fact, whereupon, it became incumbent upon the seller, if it wished to enforce further payments, to lease the machinery to some other person for the benefit of the purchaser, at rentals specified in the contract. The contract then provides that, if the machine and equipment cannot be rented upon the terms mentioned, "maturity of the deferred purchase money notes will be extended or postponed by the seller until such a time as that the machinery can be rented." At the time of the appointment of the receiver, the seller had not rented this machinery, although it recognized its right so to do as its remedy. At the time of the appointment of a receiver, therefore, it was the seller and not the purchaser who had failed to perform this contract.

But it is claimed that, conceding that the balance of the purchase price was not due at the time of the appointment of the receiver, yet the act of the purchaser in permitting a receiver to be appointed because of insolvency constituted an anticipatory breach of this contract. In support of this contention the case of Central Trust Co. v. Chicago Auditorium Association, 240 U. S. 581, 36 S. Ct. 412, 414, 60 L. Ed. 811, L. R. A. 1917B, 580, is relied upon. In that case a transfer company had a contract with the Auditorium Association, whereby, for a certain consideration payable in monthly installments, it was given the sole and exclusive privilege of doing the delivery and baggage business for the Auditorium Hotel. The transfer company became bankrupt, and the Auditorium Association filed proof of debt for the damages which it had suffered by failure of the transfer company to complete the contract. The court held that bankruptcy amounted to an anticipatory breach of the contract, and that the association had a right to file its proof of debt for the damages sustained. That was a contract for services to be performed by the bankrupt, and, as the trustee in bankruptcy could not perform it, it was held that the bankruptcy amounted to an anticipatory breach. In the instant case, the purchaser had paid several thousand dollars to the seller, and at the time of the appointment of a receiver it was under no obligation to make any further payments. It had given the required notice, and, under the terms of the contract, it devolved upon the seller to rent the shovel and credit the proceeds upon the purchase price. As against the purchaser this was its only remedy. The appointment of the receiver for the purchaser did not prevent the seller from performing its part of the contract and in that manner satisfying its claim.

If the theory of the lower court be correct, valuable property interests acquired by an insolvent thrown into bankruptcy or receivership, as a purchase under a conditional sales contract, would be lost to the general creditors, on the theory of anticipatory breach. To illustrate, if in the instant case the entire purchase price, save $100, had been paid, yet the vendor might take the property to the exclusion of general creditors. The law neither contemplates nor requires such an inequitable result. The mere appointment of a receiver cannot be given the broad and sweeping effect attributed to it by the lower court. Watson v. Merrill (C. C. A.) 136 F. 359, 363, 69 L. R. A. 719; Pennsylvania Steel Co. v. New York City Ry. Co. (C. C. A.) 198 F. 721, 744; Samuels v. E. F. Drew & Co. (C. C. A.) 292 F. 734; Wolins v. Conrad (Sup.) 172 N. Y. S. 216; 3 Williston on Contracts, p. 2380.

In Watson v. Merrill, in an opinion by the late Judge Sanborn, this court said: "His trustee does not become liable for his debts, but he does acquire the right to accept and assume or to renounce the executory agreements of the bankrupt, as he may deem most advantageous to the estate he is administering, and the parties to those contracts which he assumes are still liable to perform them."

In Pennsylvania Steel Co. v. New York City Ry. Co., supra, it is said that: " * * * A receiver is entitled to a reasonable time in which to determine whether to adopt or renounce the contracts of the corporation for which he is appointed. During this trial period the operations under the contract may go on and the legal consequences flowing from the fact of the receivership may be suspended in their operation. If the receiver elect to adopt the contract, his adoption relates back to the beginning of the receivership and the contract continues as if nothing had taken place."

In Wolins v. Conrad, supra, it was held that the anticipatory breach through the bankruptcy of a purchaser was not available in an executory contract of sale of personalty, that the interest in the property passed to the receiver as an asset which he could have disposed of for the benefit of the estate, and that the bankruptcy of the vendee did not entitle the vendor to consider the contract at an end because of the alleged anticipatory breach.

Generally speaking, a receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject, of course, to liens and equities existing at the time of his appointment. Fourth Street Natl. Bank v. Yardley, 165 U. S. 634, 17 S. Ct. 439, 41 L. Ed. 855; Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; Kneeland v. American Loan & Tr. Co., 136 U. S. 89, 10 S. Ct. 950, 34 L. Ed. 379; Hurley v. Atchison T. & S. F. R. Co., 213 U. S. 126, 29 S. Ct. 466, 53 L. Ed. 729; Central Union Trust Co. v. Missouri, K. & T. Ry. Co. (D. C.) 28 F. (2d) 176; Id. (C. C. A.) 28 F.(2d) 177.

Here, the seller is seeking to invoke the doctrine of anticipatory breach of a contract which it has in effect itself broken by insisting on payment instead of renting the shovel. It is an elementary rule that a person who has himself broken a contract cannot recover on it. Omaha Water Co. v. Omaha (C. C. A.) 156 F. 922, 929; Catterlin v. Voney (C. C.) 177 F. 527; National Surety Co. v. Long (C. C. A.) 125 F. 887; Loudenback Fertilizer Co. v. Tennessee Phosphate Co. (C. C. A.) 121 F. 298, 304, 61 L. R. A. 402.

This court in Omaha Water Co. v. Omaha, supra, in an opinion by Judge Hook, said: "One party to a continuing contract of mutual and dependent covenants cannot require the other to perform executory stipulations while he persists in defaults and compels the other to seek the aid of the courts for compensation due for those he has already executed."

In Loudenback Fertilizer Co. v. Tennessee Phosphate Co., supra, in an opinion by Judge Lurton, later Associate Justice of the Supreme Court of the United States, it is said: "If there is anything well settled it is that the party who commits the first breach of the contract cannot maintain an action against the other for a subsequent failure to perform."

As the plaintiff, under the plain provisions of the contract by which it sold the machinery to the Arkansas General Construction Company, had failed to pursue the executory provisions of the contract to be performed by it, and as there was no breach of the executory provisions of the contract to be performed by the purchaser, it follows that the plaintiff was not, as against the receiver, entitled to possession of the property, except for one purpose, and that was for the purpose of leasing and collecting the rents arising therefrom to apply upon the indebtedness. This it has not sought to do, and the defendant has not denied it the right to possession for that purpose. But it is contended that the receiver repudiated the contract and abandoned the property. This contention is based upon a letter written by the receiver, in which he said: "I have been in conference with a party who is desirous of purchasing this shovel. If I could realize anything out of the equity of the Construction Company, of course I desire to do so. Any sale, of course, which is made would be subject to a satisfactory arrangement between you and the purchaser as to the balance of the purchase price due you. If I am unable to make some arrangement of this nature within a reasonable time, it is my purpose to surrender the machinery back to you."

It is first to be observed that the receiver made the arrangement referred to, and in that event at least he did not suggest that he would abandon the contract. He states that the sale which he proposes would be subject to a satisfactory arrangement between the plaintiff and the prospective purchaser as to the payment of the balance of the purchase price. The letter amounts to nothing more than a suggestion that the purchaser will take the property subject to the terms of the contract. Neither did the receiver decline to carry out the contract. It must constantly be borne in mind that the contract did not require payment by the receiver, under the facts disclosed by this record, but it did require affirmative action on behalf of the seller.

The contract was assignable, as appears from its specific recitals. It contains provision that: "This agreement shall apply to and bind the heirs, executors, administrators and assigns of the purchaser and seller and shall inure to the benefit of seller's and purchaser's successors and assigns."

There was nothing in the nature of the contract preventing its assignment, and we are clear that it was assignable. Iowa Bridge Co. v. Commissioner (C. C. A.) 39 F.(2d) 777; American Smelting & Refining Co. v. Bunker Hill & Sullivan Mining, etc., Co. (D. C.) 248 F. 172. The so-called sale by the receiver was not hostile to the title of the plaintiff, but in recognition of it. No provision of the contract at least attempted to prevent an assignment of the contract itself, and this in effect is what the receiver did. Neither does any provision in the contract prohibit a transfer resulting by operation of law, so that the

passage of title to the receiver for purposes of administration was not a breach of the contract. In Central Trust Co. v. Chicago Auditorium Association, supra, the court said: "It may be conceded that the contract was assignable, and passed to the trustee * * *; for although there was a stipulation against assignment without consent of the Auditorium Association, it may be assumed that this did not prevent an assignment by operation of law."

See, also, In re Prudential Lithograph Co. (C. C. A.) 270 F. 469; Gazlay v. Williams, 210 U. S. 41, 28 S. Ct. 687, 52 L. Ed. 950, 14 L. R. A. (N. S.) 1199.

Whatever equitable rights or remedies the plaintiff might invoke by a suit in equity, we are clear that, as a matter of law, at the time of the commencement of this action, it was not entitled to the possession of the property, except for the purpose of enabling it to rent it and apply the rental on the indebtedness, a right which defendant concedes.

The judgment appealed from is therefore reversed, and the action remanded for further proceedings consistent herewith.