ARKANSAS FUEL OIL COMPANY *v.* PACE.

4-6462                                                          155 S. W. 2d 886

Opinion delivered November 10, 1941.

*Buzbee, Harrison & Wright,* for appellant.
*Bradley & Patten,* for appellee.

GREENHAW, J. George W. Zeller, W. W. Brown and the appellee, George H. Pace, were the owners of certain oil and gas leases in Ouachita county, Arkansas; that is, they owned an undivided seven-eighths interest in said oil and gas leases, the other one-eighth interest being the royalty interest in said leases. They purchased these leases on which two producing oil wells were located. The expense which had been incurred by them in connection with said leases amounted to approximately $70,000. They sold and assigned an undivided one-half interest therein to the Louisiana Oil Refining Corporation in February, 1925. The provisions of the contract, dated February 25, 1925, which we think pertinent to the issues here involved are:

"And, whereas, parties hereto have reached an understanding with respect to the development of said leases and division of funds accruing to the working interest therein, it is mutually understood and agreed as follows:

"Party of the second part shall have full and complete charge and management of further operation and

development of said leases in the production of oil and gas, and an equal one-half of the expenses incurred in such operation, management and development, including labor, material, fuel and an equitable proration of what is commonly known as field overhead expense, including the salary of a production superintendent, shall be paid by parties of the first part; it being understood, however, that all material used in such further development and operation of said leases shall be furnished through second party's warehouse and shall bear a handling charge of 10 per cent.

"Parties of the first part have this day assigned an undivided one-half interest in and to all of the above oil and gas leases covering the lands above described to the party of the second part for the consideration of seventy-five thousand dollars ($75,000), retaining to themselves the remaining undivided one-half interest therein. Now it is mutually agreed that the party of the second part shall be reimbursed, the said $75,000 from funds accruing to be one-half working interest in said leases retained by parties of the first part; or, in other words, from one-fourth of the entire production, contingent only upon the production of a sufficient volume of oil or gas therefrom to make the reimbursement herein contemplated, said oil and gas, however, to be subject to the payment of its pro-rata part of the oil obligations chargeable against said leases; it being understood that the oil obligations are to be equally borne by parties of the first part and the party of the second part. . . .

"It is mutually agreed that George W. Zeller is the agent of the parties of the first part, to whom said statements as to operating costs may be delivered by party of the second part, and with whom questions relating to the development of said leases may, from time to time, be discussed and considered."

On or about April 1, 1927, the remaining interest in the leases owned by Zeller and Brown was acquired by the Louisiana Oil Refining Corporation, after which it owned a five-sixths interest and the appellee, Pace, owned a one-sixth interest in the seven-eighths interest

in said leases, the other one-eighth being the royalty interest.

The appellee filed this suit asking for an accounting from the appellant, Arkansas Fuel Oil Company, alleging that it had acquired all of the rights and interest of the Louisiana Oil Refining Corporation and assumed all the obligations of the contract herein referred to; that the contract provided that the parties thereto would be tenants in common and not partners. Appellee further alleged that the appellant and its predecessor had not accounted to him for the amounts due him under said contract and that the books and accounts of all the transactions pertaining to the operation of these leases were in the hands of the appellant and its predecessor and had been since the execution of said contract, and he had no way of determining the exact amount due him, and in order to ascertain this fact it was necessary to have an audit made of the books and accounts. That he had made a demand on the appellant for an accounting and to pay over to him the money due him under the terms of said contract, and that appellant had failed and refused to do so. A general denial was filed on behalf of the appellant.

The lower court found that an audit should be made, and entered an order authorizing and directing Frank L. Eaton, a certified public accountant, to make and file an audit. Pursuant to that order, Mr. Eaton made an audit which was duly filed and made a part of the records of this case. The audit showed that at the time Zeller and Brown conveyed their remaining interest in the leases to Louisiana Oil Refining Corporation on April 1, 1927, the $75,000 reimbursement provided for in the contract had been reduced to $50,909.70, and that the Louisiana Oil Refining Corporation canceled two-thirds of that balance, leaving a balance due from the appellee of $16,969.90, payable out of one-half of one-third of seven-sixteenths interest in said leases. The period covered by the audit was from the date of the contract and including December, 1940.

The appellee contended that the $75,000 reimbursement was to be made from a one-fourth working interest in said leases, and by working interest it was meant that

before any reimbursement was made out of a one-fourth interest in said leases the one-fourth interest would have to bear its pro-rata part of the operating expenses connected with the leases. It was the contention of the appellant that the reimbursement should be made from one-half of the one-half interest retained by Zeller, Brown and Pace in said leases, or an undivided one-fourth interest in the entire leases, without deducting any operating expenses from the one-fourth interest from which the reimbursement was to be made. According to the audit there was a balance due the appellee of $8,116.64 if the one-fourth interest in said leases from which the reimbursement was to be made should bear its pro-rata share of the expense of operation as contended by appellee. If, on the other hand, the one-fourth interest in the leases from which the reimbursement was to be made should not bear its pro-rata part of the expense of operation, appellee was due from the appellant the sum of $5,895.33.

The lower court found "that this reimbursement shall not be made until and after the fund or interest from which it is to be made has borne its pro-rata part of the operating expenses," and therefore rendered judgment in favor of the appellee against the appellant for the sum of $8,116.64, from which is this appeal.

According to the evidence, from the time the contract was executed all reimbursements paid from time to time to the Louisiana Oil Refining Corporation, and later to the appellant, Arkansas Fuel Oil Company, from the one-fourth interest in said leases, did not take into consideration any expenses of operation so far as said one-fourth interest was concerned; that nothing was deducted from the one-fourth interest for its pro-rata part of the expenses of operation when the reimbursements were made. Prior to April 1, 1927, when Zeller and Brown conveyed their remaining interest to the Louisiana Oil Refining Corporation, statements were rendered monthly to Zeller, who was designated in the contract as the agent of the three, and checks were sent to him for the amounts due him, Brown and Pace, and they thereafter cashed the checks and divided the proceeds. As far as the record is concerned, no objections were made to the manner in

which the Louisiana Oil Refining Corporation was handling this matter under its construction of the contract, prior to April 1, 1927.

After the Louisiana Oil Refining Corporation acquired the remaining interest of Brown and Zeller, it sent statements from time to time, together with checks, to the appellee herein which showed that it was not deducting from the reimbursements being made from time to time, pursuant to said contract, any of the operating expenses on the undivided one-fourth interest from which the reimbursements were being made. After the appellant, Arkansas Fuel Oil Company, took over and assumed all of the rights and obligations of the Louisiana Oil Refining Corporation in 1931, it rendered statements and made payments to the appellee, and it did not deduct from the reimbursement due under the contract any of the expenses of operation of the one-fourth interest in said leases, from which the reimbursement was to be made.

According to the audit, which has not been challenged for accuracy, the assets of the Louisiana Oil Refining Corporation were acquired by the Arkansas Fuel Oil Company as of April 30, 1931, and the records from that date to November 24, 1936, were kept by the Arkansas Fuel Oil Company. On November 24, 1936, under a reorganization plan under § 77B of the Bankruptcy Act, 11 USCA, § 297, the Louisiana Oil Refining Corporation was apparently dissolved and its affairs absorbed by the Arkansas Fuel Oil Company, and the books continued to be kept by the Arkansas Fuel Oil Company.

The appellant contends that since no claim was filed by the appellee in the bankruptcy proceedings and no claim set up on the books of the Louisiana Oil Refining Corporation, the appellee is now barred, under the terms of the decree in the bankruptcy reorganization proceedings, to assert the claim upon which this litigation is based. We cannot agree with the appellant in this contention. At no time since the inception of the contract which is the basis of this suit, has either the Louisiana Oil Refining Corporation or the Arkansas Fuel Oil Company ever repudiated or rejected that contract. Until

a repudiation or a rejection thereof had been made, the appellee had the right to assume that the Louisiana Oil Refining Corporation and the Arkansas Fuel Oil Company would carry out the terms of said contract, and there was no occasion for the filing of a claim under these circumstances.

In the case of *Consolidated Gas Electric Light & Power Company* v. *United Railway & Electric Company,* 85 Fed. 2d 799, the Circuit Court of Appeals for the Fourth Circuit, in the construction of a similar contract, said, among other things: "Other statutory provisions convince us that a claim under an executory contract does not arise within the meaning of the act until the contract has been repudiated. . . . An executory contract may constitute a valuable asset of the debtor, and it is established practice in equity and bankruptcy proceedings to accord to the representative of the debtor the right or option to assume or reject the obligation. . . . In this connection the distinction between the ordinary proceeding in bankruptcy and a proceeding under § 77B (11 USCA, par. 207) for a corporate reorganization is significant. Bankruptcy contemplates the sale of the bankrupt's property and a distribution of the proceeds to the creditors; and the intervention of bankruptcy constitutes a breach of an executory contract, if the trustee does not elect to assume its performance, and gives rise to a provable claim. *Central Trust Company* v. *Chicago Auditorium Association,* 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580. Section 77B, on the other hand, does not contemplate the surrender and sale of the debtor's assets, but rather the transfer of property, including executory contracts and leasehold estates not affirmatively rejected, to a reorganized body for the continuance of the business. An executory contract, therefore, remains in force in a proceeding under § 77B until it is rejected, and unless rejected, it passes with other property of the debtor to the reorganized corporation."

The Supreme Court of the United States in 300 U. S. 663, 57 S. Ct. 493, 81 L. Ed. 871, denied a petition for a writ of certiorari to review this decision.

We think that under this decision and the facts in this case, the appellee was not required to file a claim in the bankruptcy court. As stated above, since his contract was at no time rejected or repudiated by anybody connected with this transaction, and since it was an executory contract, appellee had a right to assume that the Louisiana Oil Refining Corporation and the Arkansas Fuel Oil Company would continue to operate under it and carry out its terms.

We have carefully studied the paragraph of the contract which provided for the reimbursement of the $75,000, and have concluded that, when all the provisions of this paragraph are studied and considered together, it was contemplated by the parties thereto that the reimbursement was to be made from the one-fourth interest in said leases without deducting therefrom any of the operating expenses incident to said one-fourth interest. The parties to this contract operated under this construction until this suit was filed. Neither Mr. Zeller, who was designated as agent to deal with the oil company, nor Mr. Brown, so far as the record reflects, ever objected to the construction placed thereon by the Louisiana Oil Refining Corporation. There is evidence that Mr. Pace talked to one or two representatives of the oil company about the construction the oil company had placed upon the contract, but even his conversation was not until after or about the time that Brown and Zeller conveyed their remaining interest therein to the oil company. It is, therefore, our opinion, in view of the contract itself and all of the facts and circumstances in evidence, that the appellant and its predecessor had the right to make the reimbursements from the undivided one-fourth interest without deducting its pro-rata part of the operating expense, and therefore the appellee was entitled to judgment for the sum of $5,895.33 instead of $8,116.64, as decreed by the lower court.

The lower court taxed as costs in this case, the expense of the audit. We have concluded that the audit was beneficial both to the appellant and to the appellee, and since the appellant owned an undivided five-sixths interest and the appellee an undivided one-sixth interest,

that the cost of the audit should be taxed against them according to their respective interests.

The decree of the lower court is, therefore, modified and judgment is hereby given to the appellee against the appellant for the sum of $5,895.33. The expense of the audit shall be paid by the appellant and appellee according to their respective interests, and as thus modified the decree of the lower court is affirmed.