In the Matter of HOT SPRINGS BROAD-
CASTING, INC., Bankrupt.
No. 59.

United States District Court
W. D. Arkansas,
Hot Springs Division.

Nov. 28, 1962.

D. D. Panich, Little Rock, Ark., for trustee.

Wright, Lindsey, Jennings, Lester & Shults, Little Rock, Ark., for claimant.

JOHN E. MILLER, Chief Judge.

The petitioner, World Broadcasting System, Inc., on October 15, 1962, in accordance with order of the Referee extending the time for filing, filed its petition for review of an order entered by the Referee in Bankruptcy on October 1, 1962, disallowing the claim of petitioner.

On October 24, 1962, the Referee filed his Certificate containing the entire record, including the transcript of the testimony material to the claim of petitioner against the bankrupt. Also, briefs have been received from the attorneys for the respective parties and considered along with the record.

A complete history of the proceedings and orders entered by the Referee on other petitions and motions filed by other parties may be obtained by reading In The Matter of the Hot Springs Broadcasting Company, Inc., Bankrupt, No. 59, (D.C., 1962) 207 F.Supp. 303.

On April 26, 1960, upon the petition of creditors of the bankrupt, Hot Springs Broadcasting, Inc., was adjudged a bankrupt by default.

On May 17, 1960, the first meeting of creditors was held. On May 26, 1960, the petitioner herein filed its alleged proof of claim, using official Form No. 29, appearing as Form No. 503 in 5 Collier on Bankruptcy, 14th Ed., p. 3327.

On June 13, 1960, the bankrupt filed its schedules, and in Schedule A, Statement of All Debts of Bankrupt, the name of petitioner appears as "World Broad-

**534**

casting System" but no amount is stated.

On May 28, 1960, one C. J. (Gus) Dickson filed a petition for an order to vacate the default adjudication and to dismiss the involuntary petition and discharge the Referee. The attorney for the petitioning creditors filed a motion to strike the petition to vacate the default adjudication, and on September 28, 1960, the Referee entered an order sustaining the motion to strike. A petition for review was filed, and on April 13, 1961, this court entered an order adopting and conforming the order of the Referee adjudicating the corporation a bankrupt.

On November 2, 1960, an order directing the Trustee to sell the assets of the bankrupt free and clear of liens was entered. The sale was held on November 17, 1960, with the purchaser having the burden to obtain the transfer by the F.C.C. of license to operate Radio Station KBLO. Confirmation of the sale was to await the transfer of the license, but the purchaser deposited the amount of its bid, $17,000.00, with the Trustee. The purchaser failed to obtain transfer of the license.

An order was entered August 29, 1961, canceling the sale of November 17, 1960, and the assets of the bankrupt were subsequently sold to another purchaser at a private sale.

On December 22, 1961, the Referee by order surcharged the deposit made by the first purchaser in the sum of approximately $9,000.00, and the first purchaser filed a petition for review of said order, which was disposed of by this court on July 26, 1962. See In the Matter of Hot Springs Broadcasting, Inc., Bankrupt, No. 59, (W.D.Ark.1962) 207 F.Supp. 303.

On March 30, 1962, the petitioner filed a motion for an order allowing the claim. On April 3, 1962, the attorney for the

Trustee wrote the attorney for the petitioner and stated:

"* * * I am now in receipt of your letter of March 23, enclosing Motion to Allow the Claim of World Broadcasting System, Inc., together with copy of a proposed order allowing the claim. I believe I have heretofore stated to Mr. Shults it cannot be determined at this time whether there will be anything [1] in the bankrupt estate to distribute in the way of dividends and for that reason claims filed against the bankrupt estate would not be challenged nor would anything be done with reference thereto until other phases of the bankrupt estate have been concluded. I have also stated that insofar as the Trustee is concerned, World Broadcasting System, Inc., could have and should have obtained its album long ago. If there are small parts, such as heads and arms or other pieces of equipment, they should have and could have been picked up by the representative of World Broadcasting System months ago. * * * The World Broadcasting discs and equipment have been packed and in storage many months and so far as I know are still in storage in the building occupied by the broadcasting station. Your client was notified to this effect. With reference to the Motion to Allow Claim, your attention is invited to Section 57 of the Bankruptcy Act (11 USCA) and General Order 21. Until such time as it is determined whether or not there will be assets in the bankrupt estate available for distribution to common creditors, I do not consider it proper to take the time of the Court to investigate the merits or demerits of any particular claim filed against the bankrupt estate, however, I will say in connection

---

1. The attorney for the Trustee in his statement that, "it cannot be determined at this time whether there will be anything in the bankrupt estate to distribute in the way of dividends," no doubt was referring to the litigation that was concluded on July 26, 1962, as In the Matter of Hot Springs Broadcasting, Inc., Bankrupt, No. 59, supra.

with the claim asserted by your client, I am advised it is based upon a contract, that it is a contingent claim and insofar as I know has not been liquidated in accordance with the provisions of the Bankruptcy Act. If I am in error in this connection, I still reserve the right of the Trustee in Bankruptcy to object to the allowance of the claim at the proper time."

The hearing on the motion of petitioner for allowance of the claim was held on September 21, 1962, approximately six months subsequent to the filing of the motion. In the meantime, objections were filed by the Trustee on August 31, 1962. The objections, omitting the formal parts, are as follows:

"World Broadcasting System, Inc. has filed a claim herein in the amount of $5,017.00, being Claim No. 7, upon the docket of the Referee in Bankruptcy; that said claim should be disallowed for the following reasons:

"(A) The Proof of Claim does not conform to the requirements of Section 57 of the Bankruptcy Act in that said claim is unliquidated and the amount thereof is not estimated in the manner or within a time directed by the Court; that said claim is not capable of liquidation or of reasonable estimation and that such liquidation or estimation would unduly delay the administration of the bankrupt estate and the closing thereof.

"(B) That the greater portion of said claim is based upon albums of records turned over to the bankrupt prior to bankruptcy and that subsequent thereto the claimant was authorized to pick up said albums of records and the trustee disclaimed any further interest therein.

"WHEREFORE, petitioner prays that the claim of the said World Broadcasting System, Inc. be disallowed in its entirety and for all other relief to which petitioner may be entitled."

The proof of claim, omitting the formal parts, is as follows:

"STATE OF PENNSYLVANIA}
COUNTY OF PHILADELPHIA} ss

"Lawrence D. Biele, of Philadelphia, in the County of Philadelphia, State of Pennsylvania, being duly sworn, deposes and says:

"That he' is the Treasurer of World Broadcasting System, Inc., a corporation organized and existing under the Laws of the State of Pennsylvania, and carrying on business at No. 252 Suburban Station Building Street, County of Philadelphia, State of Pennsylvania, and is duly authorized to make this proof of claim on its behalf;

"1.   That Hot Springs Broadcasting Inc., the above-named bankrupt, was at and before the filing by (or against) ——————— of the petition for adjudication of bankruptcy, and still is, justly and truly indebted (or liable) to said ——————— in the sum of Five Thousand Seventeen ($5,017.00) dollars.

"2.   That the consideration of said debt (or liability) is as follows: radio programming service.

"3.   That no part of said debt (or liability) has been paid, except NONE   .

"4.   That there are no set-offs or counterclaims to said debt (or liability) except   NONE   .

"5.   That said ——————— does not hold, and has not, nor has any person by ———————order, or to deponent's knowledge or belief, for——————— use, had or received, any security or securities for said debt (or liability) except NONE   ."

Following the hearing, the Referee, on October 1, 1962, filed his Findings of Fact and Conclusions of Law, and upon such findings and conclusions entered an order disallowing in toto the claim of the petitioner.

The Findings of Fact and Conclusions of Law of the Referee are set forth below, but the court does not deem it necessary to discuss all of the Findings of Fact.

## "1.

"That the claimant, World Broadcasting System, Inc. filed its Proof of Claim herein on May 26, 1960, alleging a debt in the sum of $5,017.-00 for programming services; that claimant did not attach to said Proof of Claim copy of any contract upon which it predicated its claim, nor did it attach an itemized statement purporting to show the amount claimed, from all of which it appears that the said Proof of Claim does not conform to the provisions of Section 57–b of the Bankruptcy Act; that no Amendment to said claim has been filed but that on September 21, 1962, the date of the hearing hereon, claimant offered in evidence a copy of a contract dated October 7, 1959, being contract No. WRW–BLO–59 purporting to have been executed by Hot Springs Broadcasting, Inc., operating Station KBLO, and by the said claimant; that said contract contains a typed Addenda appearing on Page 4 thereof which changes the rates as prescribed and also contains the following:

" 'all other terms and conditions remain in full force and effect'.

## "2.

"From the testimony offered on behalf of the claimant it appears claimant forwarded to the bankrupt a cabinet containing record albums which were received and for which the bankrupt paid transportation but apparently no other charges. The evidence further reflects that claimant delivered to the bankrupt certain vertical assemblies and not further identified except that they were used in playing the records furnished by claimant after the records had been placed upon a turntable. There was no effort on the part of the claimant to furnish an itemized statement of the albums furnished although at the pre-trial conference held in the office of the Referee the attorney for the Trustee had asked for such a statement.

## "3.

"It is undenied that no further shipment of albums was made by claimant to the bankrupt subsequent to the first shipment.

## "4.

"The Trustee introduced into evidence as Exhibit No. 1 an executed copy of a contract dated July 9, 1959, which also bears the contract number 'WRW–BLO–59'; this contract having been signed by Modern Broadcasting, Inc. On Page 4 thereof, the contract has a typed Addenda which reads in part as follows:

" 'This contract is contingent upon F.C.C. approval of change of ownership to Modern Broadcasting, Inc. (filed June 9, 1959, with approval expected momentarily) and is to become null and void unless this F.C.C. approval is granted on or before October 1, 1959.'

"The Addenda also provides that the claimant was to loan the radio station three (3) RMC vertical assemblies at no cost except transportation; the station agreeing to return the assemblies at the expiration of the contract in accordance with the provisions thereof, and all other terms and conditions were to remain in full force and effect.

## "5.

"The Trustee introduced as Exhibit No. 3 a copy of a letter written to the claimant on April 11, 1960, which refers to a previous letter, addressed to claimant on January 20, 1960, in which claimant was advised approval of the transfer referred to in the Addenda to the contract dated July 9, 1959, had not been received from F.C.C. and that the contract was therefore null and void. Exhibit

No. 3 also refers to a letter dated February 12, 1960, prepared upon stationery of World Broadcasting System for the signature of the parties, further modifying Contract WRE–BLO–59 with all terms and conditions as stated in Exhibit No. 2, which is simply changing the payment rates, to remain in full force and effect. Exhibit No. 2 was never executed by either party.

"6.

"Subsequent to bankruptcy, on March 13, 1962, counsel now representing World Broadcasting System, Inc. contacted the attorney for the Trustee, requesting that the discs furnished under the terms of the alleged contract be destroyed and an affidavit to this effect be secured and that the small equipment referred to as 'heads and arms', being the vertical assemblies, be returned to the claimant. This letter was introduced as Trustee's Exhibit No. 4. On April 3, 1962, claimant's counsel was advised that long prior thereto claimant had been notified they could pick up their albums any time they so desired; that if there were any parts such as heads and arms, or other equipment, they could pick it up also; that it was no part of the Trustee's attorney's duty to have any discs or equipment destroyed, to request any person to do so and furnish an affidavit, or to see to the return of any equipment; that such action would require a special trip to Hot Springs on the part of the Trustee's attorney and one of claimant's representatives could attend to the matter as well; that the discs and equipment claimed by the claimant had been packed and had been in storage for many months in the building occupied by the bankrupt; that claimant had been notified to this effect; that attention was invited to Section 57 of the Bankruptcy Act; that the claim, now asserted before the Court, was based upon contract, that it was a contingent claim and had not been liquidated in ac-

cordance with the provisions of the Bankruptcy Act.

"7.

"The Court finds that the Proof of Claim filed by claimant does not conform to the provisions of Section 57 of the Bankruptcy Act; that said claim was and is unliquidated as to amount and is not estimated in any manner nor is the claim capable of being estimated within a time which would properly be directed by the Court

"8.

"That said claim is not capable of liquidation or of reasonable estimation for the reason there was never a valid contract entered into between the claimant and the bankrupt since it is very clear the entire agreement was dependent upon the approval in the beginning of the transfer of the radio station and such transfer was not approved by the Federal Communications Commission.

"9.

"The Court further finds that claimant made no effort to secure the return of its albums or other equipment shipped or which it claims to have furnished to the bankrupt even though notified to do so and notified particularly that said albums and equipment would not be sold by the Trustee; that claimant made no effort whatever, even if it had a provable claim, to minimize its loss or damage.

"10.

"That claimant has not moved with diligence to liquidate its claim, even if it had a claim based upon contract, and any attempt at this time to do so would unduly delay the administration of the bankrupt estate.

"*CONCLUSIONS OF LAW*

"1.

"The claim of World Broadcasting System, Inc. as filed does not con-

form to the provisions of Section 57 of the Bankruptcy Act.

## "2.

"There was no valid contract in existence between World Broadcasting System, Inc. and the bankrupt on the date of bankruptcy."

In the Petition for Review, the petitioner alleged:

"2. The Referee erred in respect so said order, in that the Referee's finding numbered 1 fails to find that the petitioner entered into a contract dated October 7, 1959, with the bankrupt and is thus clearly erroneous.

"3. The Referee erred in respect to said order, in that the Referee's finding numbered 3 that it is undenied that no further shipment of albums was made by the claimant to the bankrupt subsequent to the first shipment was clearly erroneous.

"4. The Referee erred in respect to said order, in that the Referee's finding numbered 7 that the Proof of Claim filed by the claimant does not conform to the provisions of Section 57 of the Bankruptcy Act, that said claim was and is unliquidated as to amount and is not estimated in any manner nor capable of being estimated within a time which would properly be directed by the Court, was clearly erroneous.

"5. The Referee erred in respect to said order, in that the Referee's finding numbered 8 that the claim is not capable of liquidation or of reasonable estimation for the reason that there was never a valid contract entered into between the claimant and the bankrupt was clearly erroneous.

"6. The Referee erred in respect to said order, in that the Referee's finding numbered 9 that the claimant made no effort to secure the return of its albums or other equipment shipped or which it claims to have furnished to the bankrupt and that claimant made no effort whatever to minimize its loss or damage, was clearly erroneous.

"7. The Referee erred in respect to said order, in that the Referee's finding numbered 10 that the claimant has not moved with diligence to liquidate its claim and that any attempt at this time to do so would unduly delay the administration of the bankrupt estate was clearly erroneous.

"8. The Referee erred in respect to said order, in that the Referee's first conclusion of law that the claim of the petitioner as filed does not conform to the provisions of Section 57 of the Bankruptcy Act was clearly erroneous.

"9. The Referee erred in respect to said order, in that the Referee's second conclusion of law that there was no valid contract in existence between the petitioner and the bankrupt on the date of bankruptcy was clearly erroneous."

To overrule the Findings of Fact of the Referee, hereinbefore set forth, the court must determine that such findings were clearly erroneous. General Order 47, 11 U.S.C. following Section 53; Lines v. Falstaff Brewing Co., (9 Cir., 1956) 233 F.2d 927–933.

But the presumption of the correctness of the Referee's Findings of Fact is not extended by the General Order to conclusions of law. Walker v. Commercial National Bank of Little Rock, Ark., (8 Cir., 1954) 217 F.2d 677.

In considering the motion of the petitioner to allow its claim, it is essential that the evidence before the Referee be reviewed, and if the factual findings of the Referee are not clearly erroneous, they must be accepted by the court.

At the hearing on the motion, the petitioner introduced into evidence a written contract, dated October 7, 1959, Contract No. WRW–BLO–59, duly executed by the petitioner and the bankrupt corporation by its General Manager. In the contract the petitioner agreed to lease and ship to the radio station "a basic library

on or before August 1, 1959," of more than 4,000 program units and to supply supplemental program units aggregating not less than 600 units during any 12-month period "beginning August 1, 1959," and also to supply "program scripts weekly, beginning August 1, 1959."

The bankrupt agreed to pay to the petitioner "beginning August 1, 1959" a rental charge as set forth in the Addenda per month and to use the material in the operation of the station. The contract further provided:

"In the event Station should file a petition in bankruptcy or be adjudged a bankrupt * * * World may, at its option (a) cease further shipments hereunder without in anywise affecting the liability of Station to World for the payment of the total rent hereby reserved for the entire term hereof then remaining unpaid for said Program Service * * *. It is further agreed that nothwithstanding anything herein contained to the contrary, the said World service is leased to Station at the total rental represented by the monthly payments provided in Section B * * * and that the provisions herein contained for the payment of such rental in monthly installments is for the convenience of the Station only and that upon default in payment of such rent in installments as herein allowed, then the total rent hereby reserved for the entire term hereof then remaining unpaid shall at once become due and payable to World by the Station without any further notice or demand therefor."

The Addenda referred to in the body of the contract amends the amount of the rental as stated in Paragraph 1 of Section B, as follows:

"No charge for the month of August, 1959.

"$50.00 per month for the months of September & October, 1959.

"$75.00 per month for the months of November & December 1959.

"$130.00 per month effective January 1, 1960, and thereafter for the life of this contract * * * with the exception of no charge for the months of August & September, 1960, 1961 & 1962.

"World agrees to loan Station three (3) RMC Vertical Assemblies at no cost, except transportation. Station agrees to return these assemblies at the expiration of this contract as per Paragraph 7 Section 'B'.

"All other terms and conditions remain in full force and effect."

At the hearing the Trustee introduced into evidence as his Exhibit 1 a contract identical with the contract that had been introduced by the petitioner *except that the contract introduced by the Trustee was dated July 9, 1959, and was between the petitioner and "Modern Broadcasting, Inc., located at 1011 Central in the City of Hot Springs, State of Arkansas, hereinafter called Station, the owner or operator of Radio Broadcasting Station KBLO."*

The said contract introduced by Trustee was executed on behalf of Modern Broadcasting, Inc., by Stanley Morris who was President of that corporation.

The Addenda to the contract of July 9, Trustee's Exhibit 1, is identical with the Addenda to the contract of October 7, 1959, except that it is provided, "This contract is contingent upon FCC approval of change of ownership to: Modern Broadcasting, Inc. (Filed June 9, 1959 with approval excepted momentarily) and is to become null and void unless this FCC approval is granted on or before October 1, 1959."

Finding of Fact No. 8 of the Referee is as follows:

"That said claim is not capable of liquidation or of reasonable estimation for the reason that there was never a valid contract entered into between the claimant and the bankrupt since it is very clear the entire agreement was dependent upon the approval in the beginning of the transfer of the radio station and such

transfer was not approved by the Federal Communications Commission."

This Finding of Fact is clearly erroneous. It is admitted that the contract introduced by petitioner, dated October 7, 1959, was duly executed by and on behalf of the bankrupt by Paul L. Myers, Jr., General Manager. No contention is made that the General Manager did not have authority to execute the contract. At the time the contract relied upon by petitioner was executed, the Federal Communications Commission had refused to approve the application of Modern Broadcasting, Inc., to purchase the facilities of the now bankrupt Hot Springs Broadcasting, Inc. In other words, the contract with Modern Broadcasting, Inc., dated July 9, became "null and void" because of the failure of the Federal Communications Commission to approve the proposed sale to it, and since the proposed sale by Hot Springs Broadcasting, Inc., could not be consummated, the bankrupt entered into the contract dated October 7, and in order not to disrupt the continuity of the service that had been furnished the bankrupt and/or Modern Broadcasting, Inc., under the contract between petitioner and Modern Broadcasting, Inc., the terms of the contract of October 7 were made identical with the contract of July 9, except that no reference whatsoever was made in the contract of October 7 to any proceedings before the Federal Communications Commission. It is patently clear that it was not necessary to make any reference to the Federal Communications Commission because the license to operate the station was then in the name of the bankrupt, and it was known that it would not be transferred to Modern Broadcasting, Inc.

The fact that there appears in the Addenda to both contracts the statement, "all other terms and conditions remain in full force and effect," does not militate against the validity of the contract of October 7, 1959, nor does such statement incorporate any of the provisions of the contract of July 9, 1959, into the contract of October 7, 1959. The contract of October 7, 1959, was complete, and the only reason the Addenda was added was to change the rates which the lessee, the bankrupt, should pay for the service.

Therefore, Conclusion of Law No. 2 of the Referee that "there was no valid contract in existence between World Broadcasting System, Inc., and the bankrupt on the date of bankruptcy" is not supported by any testimony in the record.

Finding of Fact No. 9 to the effect that the claimant made no effort to secure the return "of its albums or other equipment shipped or which it claims to have furnished to the bankrupt, even though notified to do so and notified particularly that said albums and equipment would not be sold by the Trustee; that claimant made no effort whatever, even if it had a provable claim, to minimize its loss or damage" is not material since it is undisputed that the albums and other equipment, with the possible exception of one or two items, was not worth more than $50.00 and that the cost of reclaiming the articles would have exceeded their value.

Finding of Fact No. 7 that the proof of claim filed by petitioner does not conform to the provisions of Section 57 of the Bankruptcy Act, and that the claim was and is unliquidated as to amount and is not estimated in any manner, nor is the claim capable of being estimated within a time which would properly be directed by the court, is a mixed question of law and fact.

Section 57, sub. b of the Act, 11 U.S.C. § 93, sub. b, provides:

"(b) Whenever a claim is founded upon an instrument of writing, such instrument, unless lost or destroyed, shall be filed with the proof of claim. If such instrument is lost or destroyed, a statement of such fact and of the circumstances of such loss or destruction shall be filed under oath with the claim. After the claim is allowed or disallowed, such instrument may be withdrawn by permission of the court upon leaving a copy thereof on file with the claim."

Subsection d provides:

"(d) Claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest or unless their consideration be continued for cause by the court upon its own motion: Provided, however, That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this title."

Without doubt, Finding of Fact No. 7 of the Referee that the proof of claim does not conform to the provisions of the applicable statute is correct.

The proof of claim has heretofore been set forth, and the only mention of the basis of the claim are the words, "radio programming service." A copy of the contract now relied upon was not attached. Neither was any itemized statement of account attached. The proof of claim merely states that claimant is due the sum of $5,017.00 for "radio programming service". It should be remembered that the proof of claim was filed on May 26, 1960, nine days after the first meeting of creditors.

On April 11, 1960, the Manager of the bankrupt, who is presently the Trustee, wrote the petitioner, as follows (Exhibit 3 to transcript of record):

"On February 24, 1960, Paul L. Myers, Jr. wrote to you asking for a copy of the second contract between KBLO and World. A copy of the contract dated October 7, 1959 was sent to KBLO by John S. Murphy, World Sales Manager. If you would be so kind as to check the last line of the addenda on page four: 'ALL OTHER TERMS AND CONDI-TIONS REMAIN IN FULL FORCE AND EFFECT.'

"I now refer you to paragraph number one of the addenda of the original contract dated July 9, 1959: 'THIS CONTRACT IS CONTINGENT ON F.C.C. APPROVAL OF CHANGE OF OWNERSHIP TO: MODERN BROADCASTING, INC. (FILED JUNE 9, 1959 WITH APPROVAL EXPECTED MOMENTARILY) AND IS TO BECOME NULL AND VOID UNLESS THIS F.C.C. APPROVAL IS GRANTED ON OR BEFORE OCTOBER 1, 1959.'

"On January 20, 1960, I wrote a letter notifying you that we had not received F.C.C. approval and that the contract was null and void. Mr. Dick Crane came in shortly thereafter to work out an agreement. In Mr. Crane's letter to World we had an addenda contingent on F.C.C. approval, and you wrote in return that the terms in this letter could not be accepted.

"At this point KBLO has no other recourse than to abide by the contract dated October 7, 1959 and which refers to the original contract dated July 9, 1959 and term the contract null and void."

There had been some negotiations between the bankrupt and the claimant in the early part of 1960 prior to the date of the above letter of April 11, 1960, as is evidenced by Exhibit 2, which was a letter that was prepared by the petitioner undertaking to make certain changes in the contract of October 7, 1959, but the changes were never accepted by the parties, and on the date of the filing of the proof of claim the petitioner was fully advised of all conditions that existed, and, notwithstanding this knowledge on its part, it failed to comply with the statute in the filing of the proof of claim.

Therefore, Conclusion of Law No. 1 of the Referee, "The claim of World Broadcasting System, Inc., as filed does not conform to the provisions of Section 57 of

the Bankruptcy Act," is fully supported by the testimony and is not clearly erroneous.

The Referee made only two pure conclusions of law, the second one of which was that there was no valid contract in existence between the claimant and the bankrupt on the date of the bankruptcy. The court has heretofore discussed that conclusion and the finding of fact which the Referee was of the opinion supported the conclusion reached, and found that finding of fact (No. 8) was clearly erroneous and that the conclusion of law based thereon was not supported by the finding of fact.

The other conclusion of law that the proof of claim of claimant as filed does not conform to the provisions of Section 57 of the Bankruptcy Act is based upon Finding of Fact No. 1 as well as upon the first three lines of Finding of Fact No. 7. The court has heretofore held that Conclusion of Law No. 1 is supported by the Findings of Fact of the Referee, but the court is of the opinion that further consideration of the latter part of Finding of Fact No. 7, "that said claim was and is unliquidated as to amount and is not estimated in any manner nor is the claim capable of being estimated within a time which would properly be directed by the Court," should be given.

In Thompson v. England, Trustee, (9 Cir., 1955) 226 F.2d 488, the court at page 490 said:

"In order for a creditor to share in the assets of a bankrupt he must have a claim both *provable* under one or more of the overlapping subdivisions of Section 63 of the Bankruptcy Act and *allowable* under Section 57, 11 U.S.C.A. §§ 93, 103."

Section 63, sub. a of the Act, as amended, 11 U.S.C. § 103, sub. a, provides:

"(a) Debts of the bankrupt may be proved and allowed against his estate which are founded upon * * * (4) an open account, or a contract express or implied; * * * and (8) contingent debts and contingent contractual liabilities; or (9) claims for anticipatory breach of contracts, executory in whole or in part, including unexpired leases of real or personal property."

It is generally held that the bankruptcy of one of the contracting parties is, in itself, a sufficient breach of the contract to support a claim against the estate of the party who has been declared bankrupt. In Central Trust Co. v. Chicago Auditorium Association, (1916) 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811, the court, beginning on page 589 of 240 U.S., page 414 of 36 S.Ct., 60 L.Ed. 811, held that as a general rule where a party bound by an executory contract repudiates his obligations or disables himself from performing them before the time for performance, the promisee has the option to treat the contract as ended, so far as further performance is concerned, and maintain an action at once for the damages occasioned by such anticipatory breach. Continuing the discussion, the court said:

"* * * Whether the intervention of bankruptcy constitutes such a breach and gives rise to a claim provable in the bankruptcy proceedings is a question not covered by any previous decision of this court, and upon which the other Federal courts are in conflict."

The question was resolved by the statement of the court appearing at page 592 of 240 U.S., page 415 of 36 S.Ct., 60 L.Ed. 811, as follows:

"* * * We conclude that proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executory agreement, within the doctrine of Roehm v. Horst, supra." (178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953).

As to the law governing the amount of damages which may be recoverable for an anticipatory breach of an executory contract, it is stated in the second syllabus:

"Whether damages for anticipatory breach of an executory contract

which one of the parties can cancel on notice after a stated period can be recovered for the life of the contract or only up to the end of such period after the breach involves no Federal question."

In Williams v. Maners, (1929) 179 Ark. 110, 14 S.W.2d 1104, the court at page 116 of 179 Ark., at pages 1106, 1107 of 14 S.W.2d said:

"Appellant also contends for a reversal of the decree on the ground that under the contract W. H. Maners' only remedy was to remain in possession of the property and collect his indebtedness out of the rents. There may have been something in this contention if B. L. Williams had not become insolvent and a bankrupt. The proceedings in bankruptcy placed him and appellant in a position where they could not carry out the contract relied upon."

See, also, Arkansas Fuel Oil Co. v. Pace, 203 Ark. 52, 155 S.W.2d 886.

The contract of October 9, 1959, related back to August 1, 1959. The debtor was adjudged bankrupt April 26, 1960. The contract had thus been in effect approximately nine months, but by its terms no charge was to be made for the month of August 1959, nor for the months of August and September 1960, 1961, and 1962.

The record is silent as to what the relationship was between Modern Broadcasting, Inc., and Hot Springs Broadcasting, Inc., on July 9, 1959, when a contract was entered into between the claimant and Modern Broadcasting, Inc., but a reading of the Addenda to that contract justifies the court in assuming that Modern Broadcasting, Inc., and Hot Springs Broadcasting, Inc., had entered into a contract for the purchase and sale of the radio station, conditioned upon the approval by the F.C.C. of such sale on or before October 1, 1959. The purchase and sale was not approved, and therefore the contract of October 9, 1960, was entered into and related back to August 1 evidently for the purpose of covering any material or property that had been delivered by claimant to either Modern Broadcasting, Inc., or Hot Springs Broadcasting, Inc. It is clear, however, that Hot Springs Broadcasting, Inc., operated from October 9, 1959, under the contract until the adjudication of bankruptcy on April 26, 1960.

The record is also silent on whether the contract of October 9, 1959, was assumed or rejected within 60 days after the adjudication, but under § 70, sub. b of the Bankruptcy Act, 11 U.S.C. § 110, sub. b, the contract is deemed to have been rejected by the Trustee. In fact, on April 11, 1960, seven days after the filing of the involuntary petition by creditors against the bankrupt, the then manager of Hot Springs Broadcasting, Inc., advised the claimant that the only contract that the Hot Springs Broadcasting, Inc., would recognize was the one dated July 9, 1959, and under the specific terms of that contract, it became null and void upon the refusal of the F.C.C. to approve the purchase and sale of the radio station to Modern Broadcasting, Inc.

The court is of the opinion that the claim of claimant against the bankrupt was a provable debt under Sec. 63, sub. a(4) or under Sec. 63, sub. a(9) of the Bankruptcy Act, 11 U.S.C. § 103, sub. a(4) and sub. a(9), but the claim was not allowable because the proof of claim did not conform to Sec. 57, sub. b of the Bankruptcy Act, 11 U.S.C. § 93, sub. b.

Clearly the claim of claimant was unliquidated, and Sec. 57, sub. d of the Act, 11 U.S.C. § 93, sub. d, provides:

"* * * That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this title."

In Kessler v. Jefferson Storage Corp., (6 Cir., 1941) 125 F.2d 108, the court at page 112 said:

"In this regard, it is important to observe that in bankruptcy proceedings, the claimant has the burden of liquidating its claim as a condition precedent to its allowance. 11 U.S. C.A. § 93, sub. d. Furthermore, the claimant in bankruptcy has the burden of proving its claim."

In C. D. Stimson Co. v. Porter (10 Cir., 1952) 195 F.2d 410, the court at page 413 said:

" * * * And, the burden is upon the lessor to prove and substantiate his claim both as to incidence and measure of damages."

In 6 Am.Jur.Bankruptcy, § 476 it is stated:

"Unliquidated and contingent claims being provable, the proper procedure on the part of the holder of a claim of such character is to file proof of claim and then make application to the court for an order respecting liquidation."

In 3 Collier on Bankruptcy, 14th Ed., Sec. 57.29, page 389, the rule governing the liquidation of a claim is stated, as follows:

" * * * He must file his proof of claim within the prescribed period of six months after the first date set for the first meeting of creditors. At the same time or as soon thereafter as feasible he should petition for the directions of the court as to the manner of, and the time for liquidating his claim. The statute provides neither for the time within which such petition must be filed nor for the time within which liquidation must be perfected. If the court finds that the appropriate way of liquidating the claim would involve an undue delay in the administration of the estate it will disallow the claim, in which case Sec. 63d provides that the claim is to be deemed a nonprovable debt, thereby protecting the creditor against the bankrupt's discharge."

The adjudication of the bankrupt became final on April 13, 1961, when this court entered an order confirming the order of the Referee adjudicating the corporation a bankrupt. On May 26, 1960, the claimant had filed a proof of claim that did not conform in any respect to the provisions of § 93, sub. b of the Bankruptcy Act. The claimant knew that whatever claim it might have was unliquidated, and yet it took no action until March 30, 1962, or one year, ten months, and four days subsequent to the date of the filing of the alleged proof of claim, and ten months and seventeen days after the adjudication of bankruptcy had become final.

At that time, March 30, 1962, it merely filed a motion for the entry of an order allowing the claim. At no time did it request the court to fix a time within which the liquidation should be perfected or the procedure to be followed in arriving at the amount due, and Finding of Fact No. 10 of the Referee that claimant has not moved with diligence to liquidate its claim, even if it had a claim based upon contract, and any attempt at this time to do so would unduly delay the administration of the bankrupt estate, was entirely justified and proper under the facts as reflected by the record.

Although this court has found that the Referee erred in concluding that there was no valid contract between the claimant and the bankrupt on the date of bankruptcy, yet the court is of the opinion that the order of the Referee disallowing the claim of claimant should be approved and confirmed for the reason that the proof of claim did not conform to Sec. 93, sub. b; that the claim was unliquidated and was not liquidated, or the amount thereof estimated in the manner and within the time directed by the court; and that such liquidation at the time the order was entered disallowing the claim on October 1, 1962, "would unduly delay the administration of the estate." Sec. 93, sub. d of the Bankruptcy Act.